**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2081
_____

SHUWU WANG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-075-324)
Immigration Judge: Margaret Reichenberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 20, 2011
Before: BARRY, HARDIMAN and COWEN, Circuit Judges

(Opinion filed April 21, 2011 )
_____

OPINION
_____

PER CURIAM

　　　Shuwu Wang, a citizen of China and a native of its Hainan province, seeks review

of a Board of Immigration Appeals (BIA) decision that upheld the Immigration Judge's

(IJ) denial of asylum, statutory withholding of removal, and relief under the Convention

Against Torture (CAT). For the reasons that follow, we will deny the petition for review.

Wang was admitted to the United States at San Francisco and he overstayed the time permitted by his nonimmigrant B-1 visitor visa. He was eventually issued a notice to appear that charged Wang as being removable under 8 U.S.C. § 1227(a)(1)(B) ("Any alien who is present in the United States in violation of this Act or any other law of the United States, or whose nonimmigrant visa . . . has been revoked . . . is deportable."). Wang conceded removability. He attempted to block his removal by claiming a fear of persecution and torture should he be removed to China.

At a hearing before the IJ in Newark, New Jersey, Wang testified that he has a wife and two children, all of whom remain in China. His wife underwent a forced abortion in March 2002, and was fitted with an IUD. Wang testified that, "[i]n '03, we secretly took out or removed the IUD and in '04, we found out that [my wife] was pregnant and we went into hiding." (JA 133.) They were unable to procure a birth permit for a second child. Wang fled to the United States in June 2004, while his wife was still pregnant. He did so because birthing officials were threatening to close down his coconut factory, which Wang sold prior to his departure, and because he feared imprisonment and sterilization for his violation of China's one-child policy. Wang's wife was fined 28,000 RMB,[1] which she paid in full, for the policy violation. The fine was seven times the amount of Wang's yearly earnings from his coconut factory. Finally,

---

[1] "RMB" is the symbol for the Chinese currency, renminbi.

Wang testified that his brother-in-law had been sterilized in 2008, for having three children without a permit.

The IJ denied all requested relief. Specifically, the IJ determined that, under In re J-S-, 24 I. & N. Dec. 520 (A.G. 2008), Wang was not eligible for asylum based solely on his wife's forced abortion. The IJ was "unable to conclude that [Wang's] family having to pay the fine assessed for the second child of 28,000 RMB would constitute past persecution . . . [because they] were able to pay the fine by borrowing money and [by Wang's] providing money himself." (JA 60.) The IJ was also unable to conclude that the sale of Wang's coconut factory was persecutory, as Wang "has not told us that he was forced to shut down the factory, but rather did so out of his convenience because he did not want to speak to the officers anymore and preferred to come to the United States to avoid having to talk to them about his wife." (JA 61.) In addition to finding no past persecution, the IJ determined that Wang failed to demonstrate future persecution because his fear of sterilization was objectively unreasonable. The IJ also found that Wang proffered no evidence to support his CAT claim.

Wang raised two claims on appeal to the BIA: "that the Immigration Judge erred in finding that he did not (1) suffer the severe economic deprivation described in Matter of T-Z-, 24 I. & N. Dec. 163, 170-74 (BIA 2007), and (2) demonstrate a well-founded fear of future persecution in the form of sterilization." (JA 3.) The BIA agreed with the IJ that the 28,000 fine was not so severe as to rise to the level of persecution. The BIA also agreed with the IJ that, "[e]ven though [Wang] asserts that he shut down his

3

company due to pressure from family planning officials, the record does not indicate that the officials would have taken his company from him or what financial remuneration he received from the sale of the company." (JA 4.) Finally, the BIA determined that "under the three-prong test of Matter of J-H-S-, [24 I. & N. Dec. 196, 198 (BIA 2007)] . . . [Wang] was unable to show that current [one-child policy] enforcement efforts give rise to a well-founded fear of persecution as sterilization is encouraged but not mandated." (JA 5.) Accordingly, Wang's appeal was dismissed, and the BIA ordered him removed to China. This petition for review followed.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). When the BIA issues its own opinion, we review the BIA's disposition but look to an IJ's findings of fact or rulings on particular claims when the BIA expressly defers to them. See Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). "We review the facts upon which the BIA's decision rests to ensure that they are supported by substantial evidence from the record considered as a whole, and we will reverse based on a factual error only if any reasonable fact-finder would be 'compelled to conclude otherwise.'" Id. (internal citations omitted). The BIA's legal conclusions, by contrast, are reviewed de novo. Id.

## III.

We have reviewed the claims of error raised by Wang in his opening brief and find them to be without merit. In particular, substantial evidence supports the BIA's determination that Wang failed to demonstrate that he suffered "economic restrictions so

4

severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). While we agree with Wang that a 28,000 RMB fine is large in the abstract, large fines are not, ipso facto, onerous to the asylum-seeker. Cf. Liao v. U.S. Dep't of Justice, 293 F.3d 61, 70 (2d Cir. 2002) (alien failed to prove past economic persecution, where "[n]o testimony or evidence was presented regarding petitioner's income in China, his net worth at the time of the fines, or any other facts that would make it possible for us to evaluate his personal financial circumstances in relation to the fines."); Li v. Att'y Gen., 400 F.3d 157, 169 (3d Cir. 2005) (specifically noting the alien's relative poverty in support of a determination that he suffered economic persecution). Indeed, it appears from the record that Wang and his wife had little trouble rounding up the money necessary to pay the fine.

Furthermore, substantial evidence supports the BIA's determination that Wang lacks a well-founded fear of sterilization upon repatriation to China. A "well-founded fear" has subjective and objective components: "the alien must entertain a subjective apprehension that persecution will follow repatriation, and that apprehension must be objectively reasonable in light of the circumstances of the alien's case." Huang, 620 F.3d at 381. In Chen v. Attorney General, --- F.3d ---, 2011 WL 923353 (3d Cir. Mar. 18, 2011), we noted the BIA's prior observation that the 2007 State Department country report for China—made part of the record in Wang's case—"indicates that physical coercion to achieve compliance with family planning goals is uncommon and unsanctioned by China's national laws and that the overall policy is much more heavily

reliant on incentives and economic penalties." Id. At *3 (citation omitted). The BIA in this case agreed with the IJ that, given the documentary evidence of record and the fact that Wang's wife had not been sterilized in the four years following her second pregnancy, Wang's fear of sterilization was not objectively reasonable. We are not compelled to make a contrary determination.

Accordingly, Wang's petition for review will be denied.