**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3269
_____

SHUWU WANG,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-075-324)
Immigration Judge:  Honorable Margaret Reichenberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 2, 2013

Before:  FUENTES, HARDIMAN and VAN ANTWERPEN, <u>Circuit Judges</u>

(Opinion filed:January 3, 2013 )
_____

OPINION
_____

PER CURIAM

        Shuwu Wang seeks review of an order of the Board of Immigration Appeals

("BIA" or "Board") denying his motion to reopen his removal proceedings.  For the

reasons that follow, we will deny the petition for review.

Wang, a native and citizen of China, was admitted to the United States in 2004 as a visitor, and overstayed. The Department of Homeland Security issued a Notice to Appear, charging Wang with removability under 8 U.S.C. § 1227(a)(1)(B). Wang conceded his removability and filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), claiming a fear of persecution and torture should he be removed to China.

At a merits hearing, Wang testified that he has a wife and two children, all of whom remain in China. His wife underwent a forced abortion in 2002, and was fitted with an IUD. Wang claimed that, in 2003, his wife removed the IUD and that, soon after, she became pregnant with their second child. Wang testified that he fled to the United States while his wife was still pregnant with their second child. He did so because officials were threatening to close down his coconut factory, which Wang sold prior to his departure, and because he feared imprisonment and sterilization for his violation of China's one-child policy.

Following the hearing, the Immigration Judge ("IJ") denied all requested relief, determining that Wang was not eligible for asylum based solely on his wife's forced abortion. The IJ was also unable to conclude that the sale of Wang's coconut factory amounted to persecution. In addition to finding no past persecution, the IJ determined that Wang failed to demonstrate a well-founded fear of future persecution because his fear of sterilization was objectively unreasonable. The IJ also found that Wang proffered no evidence to support his CAT claim. In a March 2010 decision, the BIA dismissed

Wang's administrative appeal. We denied Wang's petition for review. Wang v. Att'y Gen., 424 F. App'x 172 (3d Cir. 2011).

In January 2012, Wang filed a motion to reopen with the BIA, based on allegations of changed country conditions in China since the time of his original hearing. Specifically, he claimed that there has been increased enforcement of the population control policy since 2009. Wang also argued that he will be harmed because he recently became a Christian, and he asserted eligibility for asylum due to his fear of religious persecution in light of the increase in human rights abuses committed against members of unregistered churches in China.

The BIA denied the motion to reopen as untimely, finding that Wang had not established changed country conditions for those who have violated family planning policies. The Board also determined that Wang failed to establish prima facie eligibility for asylum and related relief based on his Christianity. Finally, the BIA interpreted the affidavit that Wang attached to his motion to reopen as raising an ineffective assistance of counsel claim.[1] The BIA determined that, to the extent Wang was raising an ineffective assistance of counsel claim, he had not complied with the procedural requirements of Matter of Lozada, 19 I. & N. Dec. 637, 639 (BIA 1988). The Board further determined

---

[1] In his affidavit, Wang indicated that in June 2004, a "law firm" told him that he could apply for a green card, but that his attorney failed to help him organize his documents, or discuss the importance of those documents. (Administrative Record "A.R." at 42.) Wang did not otherwise describe that attorney's representation, and he appears to have been represented by new counsel when he filed his asylum application.

3

that Wang did not show diligence in investigating and bringing the claim, nor did he explain how counsel's alleged deficient performance prejudiced his case.[2]

We have jurisdiction under 8 U.S.C. § 1252 and review a decision denying a motion to reopen for abuse of discretion. Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). Under this standard, we may not disturb the BIA's decision unless it is "arbitrary, irrational, or contrary to law." Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002) (internal quotation marks and citation omitted).

Wang does not dispute that his motion to reopen was untimely filed. See 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2) (setting 90-day period for a motion to reopen). Rather, he argued to the BIA that his motion fell within the exception to the time limit based on changed country conditions. The time limitation does not apply if the movant seeks reopening "based on changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii). In addition to submitting new evidence showing materially changed conditions, an applicant seeking to reopen proceedings must also make a prima facie showing that he is eligible for the desired relief. Guo, 386 F.3d at 563.

_____

[2] In his opening brief, Wang does not take issue with the Board's determination. He argues only that he did not, in fact, raise an ineffective assistance of counsel claim in his motion to reopen. Given that Wang does not contest the Board's substantive ruling, we will not review this issue on appeal. See Bradley v. Att'y Gen., 603 F.3d 235, 243 n.8 (3d Cir. 2010) (holding that argument not raised in opening brief is waived).

4

In his opening brief, Wang argues that the Board erred in determining that he did not establish that there has been a material change in China's enforcement of its family planning policy since his 2009 hearing. In support of his claim that country conditions have changed, Wang relied heavily upon a purported letter from the Qinghao Jiaji Town Birth Control Office. (A.R. at 83.) The letter informs Wang that officials have been looking for him, and that if he does not report to the Office, his property will be "forcibly" sealed. (Id.) The BIA noted, however, that this letter had not been authenticated as required by 8 C.F.R. § 1287.6, or in any other manner. We have held that it is reasonable for the BIA to discount documents under such circumstances. See Lin v. v. Att'y Gen., -- F.3d --, 2012 WL 5907497 at *3-4 (3d Cir. Nov. 27, 2012); Chen v. Att'y Gen., 676 F.3d 112, 117 (3d Cir. 2011). As the Board noted, the letter was not signed by an official and Wang provided no independent verification of the letter's authenticity such as an attestation by an official from the Qinhao Jiaji Town Birth Control Office, or other local government agency.

Wang argues, however, that the stamp on the letter was sufficient to authenticate the letter. However, as the Government correctly notes, Wang does not explain why the Board should have considered the stamp to be sufficient indicia of the letter's authenticity. Although we have previously credited petitioners' efforts to prove authenticity by means other than those prescribed in § 1287.6, see generally Lin, 2012 WL 5907497 at *4, Wang has not done so here.

We further agree with the BIA that the bulk of Wang's other documentary evidence, although suggesting that there have been episodic incidents of forced sterilization in China, does not establish that there has been a material change in country conditions since the time of his 2009 hearing.[3] Accordingly, we will not disturb the BIA's determination.

In support of reopening his immigration proceedings, Wang also argued that, since 2009, there has been a change in China regarding the treatment of Christians. The BIA did not explicitly state whether Wang's evidence demonstrated a change in country conditions. Rather, the Board concluded that Wang had not presented grounds for reopening the proceedings because he did not establish a prima facie asylum case. Wang argues that the Board erred in so holding.

Where, as here, an alien seeking asylum does not allege past persecution, he must establish that he has a well-founded fear of future persecution. See Chavarria v. Gonzalez, 446 F.3d 508, 515-16 (3d Cir. 2006) (citing 8 U.S.C. § 1101(a)(42)(A)). To make this showing, he must "demonstrate a subjective fear that is supported by objective evidence that persecution is a reasonable possibility." Yu v. Att'y Gen., 513 F.3d 346,

---

[3] Wang argues that the Board also erred in determining that he failed to establish prima facie eligibility for asylum and related relief based on his alleged violations of the family planning policy. However, the Board made no such finding. Rather, as discussed, the Board determined that Wang failed to introduce material evidence of changed country conditions with regard to enforcement of the policy. Because the Board was permitted to deny Wang's motion to reopen on that basis alone, see INS v. Abudu, 485 U.S. 94, 104-05 (1988), it was not also required to decide whether Wang had established a prima facie case for relief.

6

348 (3d Cir. 2008) (internal quotation marks and citation omitted).  The term "persecution" includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," but "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993).

The record evidence does not compel the conclusion that Wang has a well-founded fear of future persecution on account of his religious practice.[4]  The 2011 U.S. State Department Profile for China indicates that treatment of unregistered religious groups "varies from region to region."  (A.R. at 121-23.)  Wang did not submit any evidence regarding government control of unregistered churches in his home province, however.  The other documentary evidence that Wang submitted suggests that members of underground Christian churches are subject only to harassment and discrimination. Given that Wang has submitted no evidence that he will be in a leadership position in an underground church, the Board's finding that Wang did not establish that he would be persecuted if returned to China is supported by substantial evidence.  Moreover, Wang's

---

[4]Wang contends that the BIA erred in discounting a letter from his wife, in which she described having narrowly escaped arrest on one occasion for participating in house church activities in China.  Although the BIA questioned the evidentiary value of Wang's wife's letter because it was uncorroborated, the BIA did not exclude the document from consideration.  Rather, in considering that piece of evidence, BIA assigned it little probative value in light of a lack of supporting documentation.  For example, the BIA noted that Wang's wife did not submit any police reports, arrest records, or statements from other church members who experienced persecution as a result of their religious practice.  We conclude that the BIA was within its discretion to find that the letter had insufficient evidentiary value to support reopening.

recent conversion to Christianity merely establishes that his personal circumstances have changed. Changed personal circumstances are insufficient to excuse an alien from the 90-day time limit on a motion to reopen. See Khan v. Att'y Gen., 691 F.3d 488, 497-98 (3d Cir. 2012).

For all of these reasons, we hold that the BIA did not abuse its discretion in denying Wang's motion to reopen. We will therefore deny the petition for review.