PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1668
_____

GEN LIN,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                    Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A087-438-534)
Immigration Judge: Honorable Roger C. Harris
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2012

Before:  SCIRICA, FISHER, and JORDAN, *Circuit Judges*.

(Opinion Filed:  November 27, 2012)
_____

Zhou Wang
P. O. Box 130182
New York, NY  10013
        *Counsel for Petitioner*

Eric H. Holder, Jr.
Stuart F. Delery
Ernesto H. Molina, Jr.
Kate D. Balaban
Jamie M. Dowd
Thomas W. Hussey
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P. O. Box 878, Ben Franklin Station
Washington, DC  20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Gen Lin petitions for review of a February 23, 2012 decision of the Board of Immigration Appeals ("BIA") denying his motion to reopen his removal proceedings. For the following reasons, we will deny the petition.

## I.      Background

Lin is a native and citizen of the People's Republic of China.  He entered the United States illegally on or about May 15, 2004, across the Mexico-Texas border.  On

December 12, 2008, he was served with a Notice to Appear ("NTA") before an Immigration Judge ("IJ"), and he has conceded removability under 8 U.S.C. § 1182(a)(6)(A)(i). To avoid removal, Lin petitioned for asylum, for withholding of removal, and for protection under the Convention Against Torture ("CAT").

In support of his petition, Lin asserted that he fled China to escape religious persecution he suffered because of his Christianity. Lin claims that he joined a Christian church in China and was baptized there on June 22, 2003. He says that on October 18, 2003, he was detained for five days in a Chinese detention center for practicing his religion, and that he was interrogated about his church, severely beaten, and deprived of water and sleep. According to Lin, after his family paid a fine and he was released from detention, he continued to fear persecution and decided to leave the country. He chose to come to the United States because it "is a country … [where] you have freedom to believe and practice your religion." (J.A. at 181.) He testified that he still practices Christianity and would continue to practice if removed to China.

On August 23, 2010, the IJ denied Lin relief and ordered him removed to China. That decision was based on Lin's failure to file his petition for asylum within one year of his arrival, and on an adverse credibility determination. The IJ found Lin's testimony unworthy of belief largely because Lin had failed to provide corroborating witness testimony, despite having relatives in the United States, fellow congregants at his church, and an eight month delay in removal proceedings in which to collect evidence. Lin's

3

appeal of the IJ's decision was denied by the BIA on August 25, 2011.

Lin filed a timely motion asking the BIA to reopen proceedings in his case. He claimed to have previously unavailable evidence showing that he is now wanted for arrest in China for his religious practices. Lin submitted a copy of a summons for his arrest allegedly issued on September 5, 2011, by the "Public Security Bureau" of his hometown, after both the IJ's August 2010 order and the BIA's August 2011 denial of appeal. (J.A. at 23.) He also provided documentation of a friend's arrest in China for practicing Christianity, and letters from that same friend and from Lin's sister corroborating that Lin is currently wanted for arrest. Finally, he provided a document allegedly from government authorities in his hometown warning students and teachers against "involvement in illegal religious activities" (*Id.* at 62-63), and a number of photographs purportedly showing that he continues to practice Christianity. Lin did not, however, explain how he obtained this new documentation, nor did he note any efforts to authenticate it. Lin also failed to file a new application for asylum.

The BIA held that Lin did not satisfy his burden of showing prima facie eligibility for relief, and it denied his motion to reopen. In particular, it noted that there was no indication of how Lin had acquired the new documents from Chinese sources, nor had Lin made any attempt to authenticate them. The BIA's denial was ultimately based on the totality of the circumstances, which included Lin's failure to file a new application for asylum, his reliance on unauthenticated evidence, and the IJ's prior adverse credibility determination.

4

This timely petition for review followed.

## II.    **Discussion**[1]

We review for abuse of discretion a decision declining to reopen removal proceedings.  *INS v. Doherty,* 502 U.S. 314, 323-24 (1992); *Ezeagwuna v. Ashcroft,* 325 F.3d 396, 409 (3d Cir. 2003).  Under that standard, we give the BIA's decision broad deference and generally do not disturb it unless it is "arbitrary, irrational, or contrary to law." *Filja v. Gonzales,* 447 F.3d 241, 251 (3d Cir. 2006) (citation and internal quotation marks omitted).  We also note at the outset that "[m]otions for reopening of immigration proceedings are disfavored," *Doherty*, 502 U.S. at 323, and that "[g]ranting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case," *INS v. Abudu,* 485 U.S. 94, 108 (1988) (internal quotation marks omitted).

There are three substantive grounds upon which the BIA may deny a motion to reopen immigration proceedings. First, a motion may be denied when the movant fails to establish a prima facie case for the relief sought.  *Id.* at 104. Second, it may be denied when the movant fails to introduce previously unavailable and material evidence.  *Id.*; *see also* 8 C.F.R. § 1003.2(c) ("A motion to reopen proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and

---

[1] The BIA had jurisdiction under 8 C.F.R. § 1003.2. We have jurisdiction pursuant to 8 U.S.C. § 1252.

5

could not have been discovered or presented at the former hearing."). Finally, when the ultimate relief sought is discretionary, as with asylum or withholding of removal, "the BIA may leap ahead, as it were, over ... threshold concerns ... and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief." *Abudu*, 485 U.S. at 105. The BIA may also deny a motion to reopen immigration proceedings on certain procedural grounds, including failure to file an accompanying application for relief. *Jiang v. Holder*, 639 F.3d 751, 757 (7th Cir. 2011) (holding that it is within BIA's discretion to deny a petition based on petitioner's failure to file accompanying petition for relief); *see also In re Yewondwosen*, 21 I. & N. Dec. 1025, 1026 (BIA 1997) (en banc) (explaining that failure to file an accompanying petition for relief will generally result in denial of petitioner's motion).

Here, the BIA's decision to deny Lin's motion to reopen his immigration proceedings was based on both substantive and procedural grounds. Substantively, the BIA concluded that the adverse credibility determination against Lin and his reliance on unauthenticated documents prevented him from establishing prima facie eligibility for relief. Procedurally, Lin failed to submit a new application for asylum, as required by 8 C.F.R. § 1003.2. Either the substantive or the procedural ground, if well-founded, is sufficient to deny Lin's motion to reopen.

A.     *Authentication of Documentary Evidence*

To establish a prima facie case for asylum, an applicant "must produce objective evidence that, when considered together with the evidence of record, shows a

6

reasonable likelihood that he is entitled to relief." *Huang v. Att'y Gen.*, 620 F.3d 372, 389 (3d Cir. 2010) (citation omitted). On a motion to reopen removal proceedings, that evidence must be shown to have been unavailable and undiscoverable during the previous proceeding. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). Although the alien bears the burden of proving eligibility for the requested relief, 8 C.F.R. § 1003.2.(c)(1), the BIA "must actually consider the evidence and argument that a party presents," *Zheng v. Att'y Gen.*, 549 F.3d 260, 266 (3d Cir. 2008) (citation and internal quotation marks omitted), even though it need not expressly parse each point. *Id.* at 268.

Federal regulation requires that documents submitted in support of an asylum petition be properly authenticated. 8 C.F.R. § 1287.6. Specifically, 8 C.F.R. § 1287.6 requires that official records, such as the arrest warrant that Lin submitted, be "evidenced by an official publication" or "certified by an officer in the Foreign Service of the United States, stationed in the foreign country where the record is kept." *Id.* None of the documents that Lin submitted met that requirement. As Lin correctly notes, however, we have held that § 1287.6 "is not an absolute rule of exclusion." *Liu v. Ashcroft*, 372 F.3d 529, 532 (3d Cir. 2004).[2] Recognizing that "asylum applicants can not always reasonably be expected to have an

---

[2] The regulation we interpreted in *Liu* was 8 C.F.R. § 287.6, which contained identical language to 8 C.F.R. § 1287.6. The discrepancy in numbering is the result of the transfer of the Immigration and Naturalization Service's functions to the Department of Homeland Security in March 2003. 8 C.F.R. § 1001.1(c). There is no difference in substance between the two provisions.

authenticated document from an alleged persecutor," *id.*, we concluded in *Liu* that they must sometimes be allowed to "attempt to prove the authenticity … through other means … ." *Id.* at 533. We emphasized that exceptions to the standard authentication requirement are especially necessary when the petitioner attempted to comply with the regulations but "failed due to lack of cooperation from government officials in the country of alleged persecution." *Id.*

We have therefore previously granted petitions for review where the petitioner attempted, but failed, to authenticate documents, or otherwise demonstrated that it was not reasonable to expect the petitioner to provide authenticated documents. In *Liu*, the petitioner's counsel attempted to authenticate abortion records from China, but found that authentication was impossible because Chinese officials reported that they do not authenticate such documents. *Id.* at 530. Similarly, in *Leia v. Ashcroft* we remanded a BIA decision when the petitioner did not follow authentication procedures but presented other evidence demonstrating that proper authentication would be impossible. 393 F.3d 427, 435 (3d Cir. 2005) (determining that it was abuse of discretion for BIA to refuse to consider expert testimony about political conditions in petitioner's country of origin that made authentication impossible).

Lin argues that the BIA abused its discretion by failing to allow him to authenticate the documents in a manner other than that prescribed in 8 C.F.R. § 1287.6. He does not claim, however, that any such attempt to authenticate was actually made. Nor does he provide any evidence to suggest that authenticating those documents would have been impossible or otherwise unreasonable, as the petitioners did in *Leia* and

8

*Liu*. *See Leia*, 393 F.3d at 435; *Liu*, 372 F.3d at 533. In those cases, we did not lift the burden from the petitioner to establish a prima facie case for relief with authenticated documents. Rather, we held that, in some circumstances, authentication can be established through means other than the methods specifically delineated in § 1287.6. *Leia*, 393 F.3d at 435 (allowing petitioner to "prove authentication by other means"); *Liu*, 372 F.3d at 533 (holding that the official methods of authentication are not the "exclusive means of authenticating records before an immigration judge"). Lin has evidently made no effort to establish the authenticity of his documents through any means, yet he asserts that the BIA has abused its discretion by denying him the opportunity to do so now. Essentially, he argues that he deserves a second bite at the apple, without providing any justification to excuse his failure to meet his initial burden.

It is true that we have remanded cases to the BIA for further consideration of the authenticity of documents, but only when the BIA's denial of a motion or appeal was based solely on the petitioner's failure to follow the official procedures or lacked any consideration of the individual documents. *See Huang*, 620 F.3d at 391 (remanding where BIA rejected all newly submitted evidence as cumulative without considering the evidence); *Sukwanputra v. Gonzales*, 434 F.3d 627, 636 (3d Cir. 2006) (vacating a BIA order on direct appeal in part because "the IJ refused to give any weight to unauthenticated documentary evidence on the basis of [§ 1287.6] alone"); *see also Liu*, 372 F.3d at 533 (holding that it was legal error for the IJ to reject documents on the sole ground that they did not meet the specific authentication requirements in the regulation). Here, the BIA did not deny Lin's motion solely on the ground that he failed to follow the

9

authentication procedure in § 1287.6, and it did not summarily reject his evidence. Rather, the BIA questioned the authenticity of his documents because there was "no indication as to how the documents from Chinese sources came into [his] possession … ." (J.A. at 3.) The BIA also noted that the photographs Lin submitted were taken at "undisclosed times and locations," which prevented them from convincingly demonstrating that he had recently been engaged in church activities. (*Id.*) In the context of the IJ's prior adverse credibility determination, the BIA considered those deficiencies sufficient to prevent a prima facie showing of eligibility for relief.[3] We cannot say that that conclusion

---

[3] Prior adverse credibility determinations are not always relevant on motions to reopen. In *Guo v. Ashcroft*, this Court held that when a prior credibility assessment is "utterly unrelated" to a later asylum claim, that assessment cannot justify subsequent denials of relief. 386 F.3d 556, 562 (3d Cir. 2004). But that is not the case here. Lin's adverse credibility determination was based on his failure to provide evidence corroborating his Christian faith and religious persecution. Unlike the petitioner in *Guo*, who incurred an adverse credibility determination with regard to her claim of religious persecution and then filed a motion to reopen based on China's family planning policy, Lin's initial application and motion to reopen are based on the same underlying basis for asylum: religious persecution. The BIA could thus rely on the prior credibility determination if it chose to do so. *See Huang*, 620 F.3d at 389 (explaining that the evidence of record is considered along with the new evidence in determining whether the petitioner has established a prima facie case for relief).

was "arbitrary, irrational, or contrary to law." *Filja*, 447 F.3d at 251 (citation and internal quotation marks omitted).

In sum, the BIA considered the newly presented evidence and found it insufficient to establish a "reasonable likelihood that [Lin] is entitled to relief," *Huang*, 620 F.3d at 389, because Lin failed to established its authenticity. Given the heavy burden on a party moving to reopen removal proceedings, the BIA did not abuse its discretion in denying Lin's motion on that basis.

B.      *Failure to Submit a New Application for Asylum*

Even if Lin had established a prima facie showing of eligibility for relief, the BIA appropriately denied his claim on procedural grounds. Federal regulations require that "[a] motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation." 8 C.F.R. § 1003.2(c)(1). The BIA has held that "failure to submit an application for relief … will typically result in the Board's denial of the motion." *In re Yewondwosen*, 21 I. & N. Dec. at 1026. As the Supreme Court has explained, the Attorney General has a "legitimate interest in creating official procedures for handling motions to reopen deportation proceedings so as readily to identify those cases raising new and meritorious considerations." *INS v. Wang*, 450 U.S. 139, 145 (1981) (per curiam). In recognition of that interest, this Court has agreed that denying a motion for failure to comply with procedural requirements is not an abuse of the BIA's discretion. *Nocon v. INS*, 789 F.2d 1028, 1033 (3d Cir. 1986).

11

As the BIA noted in its denial of his motion, Lin did not submit a new application for relief with his motion to reopen, as required by 8 C.F.R. § 1003.2(c)(1).[4] (*See* J.A. at 3 ("The respondent has not submitted a new asylum application, as required.").)[5] Lin does not contest this finding, and there is no indication in the record that he submitted the necessary application. In light of the mandatory language in § 1003.2(c)(1), and in recognition of the BIA's authority to enforce its procedural requirements, *Wang*, 450 U.S. at 145, we conclude that that failure alone is a sufficient basis to deny his petition.[6] *In re Yewondwosen*,

---

[4] Although the BIA did not specifically base its conclusion on this fact, it noted the lack of the required application and ultimately denied the motion based on the "totality of the circumstances." (J.A. at 4.)

[5] In his motion to reopen, Lin repeated his requests for asylum, for withholding of removal, and for protection under the CAT. A motion to reopen proceedings on any of those grounds must be accompanied by "the appropriate application for relief … ." 8 C.F.R. § 1003.2(c)(1). Although the BIA noted only Lin's failure to file an application for asylum, that observation may have implicitly recognized that Lin also failed to file for withholding of removal, which can be raised through the same application. *See* 8 C.F.R. § 208.3(b) ("An asylum application shall be deemed to constitute at the same time an application for withholding of removal … ."). In any event, Lin did not file an accompanying application for relief of any kind.

[6] While the BIA may rightly enforce its procedural requirement that a petitioner submit a new application for relief with his motion to reopen, that does not mean that rigid enforcement will always be warranted. *Cf. Lu v. Ashcroft*,

12

21 I. & N. Dec. at 1026; *see also Jiang*, 639 F.3d at 757 (holding that it is within the BIA's discretion to deny a petition based on petitioner's failure to file the accompanying petition for relief); *Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1064 (9th Cir. 2008) (concluding that the BIA "did not abuse its discretion in determining that Romero-Ruiz did not satisfy the procedural requirements" because, among other things, he failed to file an accompanying application for cancellation of removal); *Palma-Mazariegos v. Keisler*, 504 F.3d 144, 147 (1st Cir. 2007) (per curiam) (concluding that failure to file an accompanying application for relief is "independently sufficient to justify the denial" of a motion to reopen); *Waggoner v. Gonzales*, 488 F.3d 632, 639 (5th Cir. 2007) (holding that the BIA did not abuse its discretion in denying a motion to reopen where the petitioner did not submit an appropriate application for relief). Accordingly, the BIA did not abuse its discretion in denying Lin's motion to reopen.

---

259 F.3d 127, 133 (3d Cir. 2001) (cautioning against a "strict, formulaic interpretation" of the procedural requirements for supporting a motion to reopen based on ineffective assistance of counsel); *Ontiveros-Lopez v. INS*, 213 F.3d 1121, 1124-25 (9th Cir. 2000) (holding that the BIA abused its discretion by imposing the procedural requirement that a motion to reopen be accompanied by supporting documentation when petitioner's counsel made diligent efforts to obtain the necessary materials and his failure was due, in part, to the administrative tribunal's own failure to respond to counsel's requests). Moreover, the BIA retains its "clear authority" to reopen proceedings "in the interests of fairness and administrative economy," even when other regulatory requirements have not been met. *In re Yewondwosen*, 21 I. & N. Dec. at 1027.

### III. Conclusion

For the foregoing reasons, we will deny the petition for review.