**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3857
_____

LIN LIN LIN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-686-780)
Immigration Judge: Honorable Frederic G. Leeds

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 1, 2013

Before: SLOVITER, CHAGARES and GREENBERG, Circuit Judges

(Opinion filed: March 5, 2013)
_____

OPINION
_____

PER CURIAM

Lin Lin Lin is a citizen of China who entered the United States without inspection

in 2001. Several years later, she filed an application for asylum and withholding of removal, alleging persecution under China's coercive population control policies.[1] In particular, Lin alleged that she would be persecuted because she is the parent of two United States citizen children. Following a merits hearing, an Immigration Judge ("IJ") denied relief, based on Lin's lack of credibility and her failure to establish that she would face forced sterilization upon return to China. In April 2009, the Board of Immigration Appeals ("BIA" or "Board") affirmed, holding that, even assuming credibility, the "evidence, in addition to the documentation assessed in our published cases, does not demonstrate a reasonable chance of forcible sterilization in the Fujian province after the birth of a second United States citizen child."

In February 2012, Lin filed a motion to reopen in which she repeated her assertion that she feared persecution based on China's family planning policies and added a claim based on her practice of Christianity. The Board denied the motion, holding that it was untimely and that Lin had not satisfied the conditions for reopening based on changed circumstances in China. In particular, the BIA rejected documents that were not accompanied by English versions or properly authenticated. With respect to Lin's allegations of religious persecution, the BIA concluded Lin "has offered no evidence of the attitude of local officials in her hometown at the time of the [IJ's] decision that reflects a change in conditions to warrant reopening . . . ." Lin then filed a counseled

---

[1] The application was originally filed by Lin and her husband. Lin's husband is not

petition for review.

We have jurisdiction pursuant to 8 U.S.C. § 1252. "Review of the BIA's decision to deny a motion to reopen is under a highly deferential abuse of discretion standard." Alzaarir v. Att'y Gen., 639 F.3d 86, 89 (3d Cir. 2011). Under this standard, we may reverse the BIA's decision only if it is "arbitrary, irrational, or contrary to law." Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002) (citation omitted). A motion to reopen generally must be filed no later than 90 days after the date of the removal order. 8 C.F.R. § 1003.2(c)(2); see also 8 U.S.C. § 1229a(c)(7)(C)(i). This limitation does not apply, however, to a motion to reopen seeking asylum or withholding of removal based on changed circumstances arising in the country of nationality, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing. 8 C.F.R. § 1003.2(c)(3)(ii); see also 8 U.S.C. § 1229a(c)(7)(C)(ii).

Lin's motion to reopen, filed almost three years after the BIA entered the final removal order, was clearly untimely. In addition, we agree with the Board that the evidence Lin submitted with her motion to reopen was insufficient to demonstrate changed circumstances. Lin claimed that she was "informed by the villagers' committee in her hometown that she is subject to the population control policy." In support of this assertion, Lin provided a letter from her mother, which stated that she had received a "certificate" after asking the "local Villagers Committee for consultation" about whether

participating in these proceedings.

3

Lin had violated the population control policy. The record also contains two "Notarial Certificate[s]" that refer to photocopies of documents issued to Lin by the "Committee of Kefeng Villager Tantou Town Changle City" on September 20, 2011 and October 2, 2011. Significantly, however, because the record does not contain English versions of these documents, the Board was unable to assess their content or evaluate their significance. See 8 C.F.R. § 1003.33 (describing requirements for translation of documents). Lin concedes that she failed to provide the English translations, but urges us to remand the petition for review so that she can correct this omission. We decline to do so. Cf. 8 U.S.C. § 1252(b)(4)(A) (providing that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based").

The Board also concluded that the "documents from Chinese Government sources have not been properly authenticated pursuant to 8 C.F.R. 1287.6(b)" because they "are not certified by an officer in the Foreign Service of the United States stationed in China." The Board acknowledged that § 1287.6 is not the exclusive means for authenticating records, but declined to credit the documents in part because of the IJ's prior adverse credibility determination. Insofar as these documents pertained to Lin's family planning policy claim, we conclude that the Board did not abuse its discretion. See Lin v. Att'y Gen., 700 F.3d 683, 688 & n.3 (3d Cir. 2012) (holding that prior adverse credibility determination was relevant to authenticity of documents submitted in support of a motion to reopen, where both the initial application and motion to reopen "are based on the same

4

underlying basis for asylum.").

In addition, the Board properly concluded that Lin failed to present material evidence demonstrating that conditions for Christians in China had changed since her hearing before the IJ in 2008. The record before the IJ included the 2007 State Department Profile of Asylum Claims and Country Conditions for China, which indicated that although the Chinese government does attempt to suppress unregistered religions, the degree of suppression varies depending on the location, size, and prominence of the unauthorized religious activity. Lin's motion to reopen did not include a more recent version of the State Department Profile. Instead, as evidence of current conditions for Christians in China, Lin relied on a letter from a friend, which stated that she was fined, arrested, and detained for five days in September 2011 after being found in possession of religious materials that Lin had sent to her. The Board did not abuse its discretion in concluding that this evidence fails to demonstrate that conditions have worsened for Chinese Christians since the time of Lin's merits hearing in 2008.

For the foregoing reasons, we will deny the petition for review.