**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2616
_____

CUI LIN,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A079-472-237)
Immigration Judge:  Honorable Frederic Leeds

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 23, 2013
Before:  FISHER, VANASKIE and ALDISERT, Circuit Judges

(Opinion filed: October 24, 2013)
_____

OPINION
_____

PER CURIAM

Cui Lin ("Lin") petitions for review of the Board of Immigration Appeals' ("BIA" or "Board") dismissal of her appeal.  For the following reasons, we will deny the petition for review.

I.

Lin is a Chinese citizen from Fujian Province who entered the United States without inspection. In 2010, she filed applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Lin claimed a fear of persecution if removed to China based upon her violation of China's family planning laws due to the birth of her two children in the United States and her practice of Christianity. Following a hearing, the Immigration Judge ("IJ") denied relief. Specifically, the IJ rendered an adverse credibility finding and determined that, in any event, Lin did not have an objectively reasonable fear that she would be forced to undergo sterilization if she returned to China and failed to demonstrate that she would be persecuted because of her participation in an underground Christian church. In May 2013, the BIA dismissed Lin's appeal. It did not address the adverse credibility finding, but agreed with the IJ that Lin "did not meet her burden of establishing that she has a well-founded fear of persecution in China." This petition for review followed.[1]

II.

We review the BIA's order of removal but may look to the IJ's decision to the extent that the BIA affirmed his conclusions. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We review factual findings for substantial evidence. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). Under this standard, we must uphold

_____

[1] We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a)(1).

2

those findings "unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

III.

If an alien cannot establish past persecution, she must demonstrate a well-founded fear of future persecution to obtain asylum. See Chavarria, 446 F.3d at 515-16 (citing 8 U.S.C. § 1101(a)(42)). To make this showing, an alien must "demonstrate a subjective fear that is supported by objective evidence that persecution is a reasonable possibility." Yu v. Att'y Gen., 513 F.3d 346, 348 (3d Cir. 2008) (internal quotation marks and citation omitted). Lin attempted to meet this burden by proving that she would be individually singled out for persecution. See Wong v. Att'y Gen., 539 F.3d 225, 232 (3d Cir. 2008).

In her brief, Lin first alleges that the BIA erred in failing to find the IJ's adverse credibility finding to be clearly erroneous. However, the BIA passed no judgment on the IJ's credibility findings and instead assumed that Lin testified credibly. Accordingly, because the BIA did not address the IJ's adverse credibility finding in its holding, that issue is not properly before this Court. See Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007).

Lin asserts that the BIA should have given greater weight to her evidence concerning forced sterilizations performed on her family members and other women who returned to China after having children abroad. The Board plausibly discounted the letters from Lin's female relatives regarding their sterilizations because the women were not similarly situated to her; their children, unlike Lin's, were not United States citizens. See Lin v. Holder, 620 F.3d 807, 810 (7th Cir. 2010). Lin also submitted evidence from

3

a man who claimed to have been forcibly sterilized after returning to China with children born in Japan; however, this man was also not similarly situated to Lin. Indeed, Lin conceded in her testimony that she did not personally know any women or men who were forcibly sterilized after returning to China with children born in the United States.

Lin also alleges that the Board erred by assigning minimal weight to documents from two village committees stating that an individual like her would be sterilized upon return to China. The BIA questioned these documents because they were photocopies that did not specifically reference Lin or identify the authors, were not authenticated, and were obtained for purposes of the hearing. Lin asserts that she laid a foundation for these certificates through the letters from her father and father-in-law indicating that they obtained them for her. However, these letters were unsworn, and her father and father-in-law were not subject to cross-examination. In these circumstances, it was permissible for the BIA to give the documents relatively little weight. See Chen v. Att'y Gen., 676 F.3d 112, 117 (3d Cir. 2011); see also Lin v. Att'y Gen., 700 F.3d 683, 686-88 (3d Cir. 2012).

According to Lin, the BIA failed to consider her background evidence regarding the application of the family planning policy in Fujian Province. The Board discounted this evidence after determining that it was similar to evidence addressed in In re J-W-S-, 24 I. & N. Dec. 185 (BIA 2007), and In re J-H-S-, 24 I. & N. Dec. 196 (BIA 2007). In any event, the BIA reasonably determined that this evidence did not concern current country conditions, did not relate to individuals similarly situated to Lin, or did not relate to policies in Fujian Province. Notably, the Board reasonably concluded that the record as a whole reflects that physical coercion is uncommon and unsanctioned.

4

The 2007 United States Department of State Profile of Asylum Claims and Country Conditions for China ("2007 Profile") indicates that although China continues to enforce its family planning regulations, it does not use measures such as forcible sterilization on Chinese couples who return to China with two children born abroad. See In re H-L-H- & Z-Y-Z-, 25 I. & N. Dec. 209, 214 (BIA 2010). We have described H-L-H- & Z-Y-Z- as "comprehensive" and "persuasive," Chen, 676 F.3d at 114, and have noted its conclusion that "physical coercion to achieve compliance with family planning goals is uncommon and unsanctioned by China's national laws and . . . the overall policy is much more heavily reliant on incentives and economic penalties." Id. at 115 (internal quotation marks omitted). Indeed, much of the evidence Lin submitted indicates that physical coercion is uncommon and that Fujian Province's overall policy is more heavily reliant on economic incentives and penalties. See Zubeda v. Ashcroft, 333 F.3d 463, 478 (3d Cir. 2003) (noting that State Department reports are "'the most appropriate and perhaps the best resource'" regarding political situations (quoting Kazlauskas v. INS, 46 F.3d 902, 906 (9th Cir. 1995))). Although Lin argued that she would face an onerous fine for violating family planning policies, the record supports the BIA's determination that Lin had not shown that she would be unable to pay the fine and that enforcement of such fines in Fujian Province has been "lax" and "uneven." Given all this, the evidence in the record does not compel a conclusion that Lin has an objectively reasonable fear of forcible sterilization.

Regarding Lin's religious persecution claim, substantial evidence supports the BIA's determination that Lin failed to show a well-founded fear of future persecution.

5

Lin needed to show an objectively reasonable fear by showing either that she would be individually selected for persecution or by demonstrating a "pattern or practice" of persecution of Christians in China. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (quoting 8 C.F.R. § 208.13(b)(2)(iii)(A)). The documentary evidence, including the 2007 International Religious Freedom Report and the 2007 Profile, indicates that there are millions of Christians worshipping in unregistered house churches in China and that some are persecuted. However, the frequency of persecution varies by region, and often only church leaders and proselytizers are targeted. Lin did not allege that she is, or is likely to become, a leader or proselytizer, nor has she shown that officials in China are aware of her religious beliefs. Further, although Lin testified that her father was detained briefly for his underground church activities, she also testified that he and other members of her family were able to resume their activities. See, e.g., Ambartsoumian v. Ashcroft, 388 F.3d 85, 90 (3d Cir. 2004) (no well-founded fear of persecution shown when parents and siblings remained in native country as practicing Baptists and no evidence that they were persecuted was presented). Accordingly, the record before us does not compel a contrary outcome to the BIA's rejection of Lin's claim. See Yu, 513 F.3d at 349 ("This Court has repeatedly recognized that State Department reports may constitute substantial evidence.").

IV.

Based on a thorough review of the record, we conclude that the evidence in the administrative record does not compel a conclusion contrary to that of the BIA. See Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). Because Lin did not meet the

6

standard for obtaining asylum, she also failed to satisfy the "higher burden of proof" required for withholding of removal. Chen, 676 F.3d at 117. Furthermore, we lack jurisdiction to consider any challenge to the denial of CAT relief, as Lin failed to exhaust such a claim before the BIA. See 8 U.S.C. § 1252(d)(1); Castro v. Att'y Gen., 671 F.3d 356, 365 (3d Cir. 2012). For the foregoing reasons, we will deny the petition for review.