**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1535
_____

BALJIT SINGH,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No.: A088-231-521)
Immigration Judge: Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 15, 2014

Before: FISHER, VANASKIE and ALDISERT, Circuit Judges

(Opinion filed:  July 17, 2014)
_____

**OPINION**
_____

PER CURIAM

     Petitioner Baljit Singh petitions for review of the Board of Immigration Appeals'

decision denying his motion to reopen removal proceedings.  For the reasons that follow,

we will deny the petition for review.

Singh, a native and citizen of India, entered the United States in 2006 without being admitted or inspected. Removal proceedings were initiated in 2007 pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). In response, Singh applied for asylum, withholding of removal, and protection under the Convention Against Torture, claiming that he was harassed and beaten on two occasions by Congress Party officials in his village in the Punjab because he refused to join the party. He sustained injuries after his first arrest which were treated at home by his mother. Following his second detention, Singh went to the hospital to be treated for his injuries. Singh testified that his brother also had been threatened by the Congress Party, and that his brother fled to England.

The Immigration Judge found Singh's testimony incredible, and found that he should have provided corroborative evidence from his brother. The IJ based his adverse credibility determination on three points of inconsistency between Singh's testimony and the documentary evidence: (1) Singh testified that the name of the hospital where he sought treatment was the Tanda District hospital, when in fact the hospital is called the Bhela Maternity and General Hospital in the Tanda District; (2) Singh testified that he stayed two nights in the hospital when the record showed he stayed only one night; and (3) Singh testified that he arrived in the United States from Canada via taxi, but his affidavit stated that he arrived by ship.

On July 2, 2010, the Board of Immigration Appeals dismissed the appeal because it found no clear error in the IJ's adverse credibility determination. The Board also affirmed the IJ's finding that Singh should have presented corroborating evidence from his brother in England. Finally, the Board noted that there was no support in the record

2

for the conclusion that Singh would likely be tortured by or with the acquiescence of a government official upon his return to India.

Singh petitioned for review of the Board's decision. After full briefing, we denied the petition for review, reasoning as follows:

> While not a particularly compelling adverse credibility finding, we cannot say that the record compels a different conclusion. For example, in his asylum application, Singh said he arrived in the United States by ship, but testified that he crossed the border in a car. When the IJ confronted him about this inconsistency and elicited further testimony, his story changed several times. He said he arrived by ship, then changed his testimony to he arrived by taxi and then boarded and waited on a ship. While this does not go to the heart of Singh's claim and strikes us as relatively minor, this inconsistency combined with the other minor inconsistencies, does not compel a conclusion that Singh is credible. Even if the testimony was credible, the BIA's determination that Singh failed to present readily available corroborating testimony is also supported by substantial evidence. In his testimony, Singh referenced that his brother was similarly mistreated for his unwillingness to be politically active, yet he did not provide any documentation corroborating his story. When the IJ probed further, Singh indicated he did not have contact with his brother but his parents, whom Singh was in contact with, did.

Singh v. Att'y Gen. of U.S., 462 F. App'x 209, 211 (3d Cir. 2012) (citations to record omitted).

On November 14, 2013, Singh filed a motion to reopen with the Board. Because the motion was not filed within 90 days of the Board's prior decision, Singh argued that he could show a change in country conditions since his merits hearing in 2008. In support of his motion to reopen, Singh argued that the police continue to be interested in him and he offered his own declaration and two declarations from his father attesting to

3

the police's continued interest. In one, his father stated that, on July 3, 2012, the police came to his house to check on his son. In the other, his father stated that police officers had raided the family home on July 12, 2013 and threatened to kill Singh. Singh also based his motion on allegedly new information on torture in India. He submitted a 2012 article from Human Rights Watch, a document titled "Torture in India 2011" that was published by the Asian Centre for Human Rights, the State Department's 2012 Country Report on human rights practices in India, and a news article discussing discrimination against Sikhs. Singh further argued that the original adverse credibility determination was flawed.

On February 6, 2014, the Board denied Singh's motion to reopen as untimely filed; the Board would not apply the exception for changed country conditions. The Board concluded that Singh had failed to provide any detailed explanation for why the police would continue to be interested in him more than 6 years after his departure from India, and that Singh had failed to explain how his country conditions evidence pertained specifically to his claim. The Board noted ongoing concerns in India that might be generally relevant but found that there was no change in conditions sufficient to support a claim that Singh was prima facie eligible for asylum, citing Matter of S-Y-G-, 24 I. & N. Dec. 247, 253 (BIA 2007). The Board gave limited weight to Singh's father's declarations.

Singh has timely petitioned for review. We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1), (b)(1). We review the denial of a motion to reopen for an abuse of discretion. Immigration & Naturalization Serv. v.

4

Doherty, 502 U.S. 314, 323 (1992). Under this deferential standard, we will not overturn the Board's decision unless it is arbitrary, irrational, or contrary to the law. See Guo v. Ashcroft, 386 F. 3d 556, 562 (3d Cir. 2004). Moreover, the Supreme Court has warned that "[m]otions for reopening of immigration proceedings are disfavored," noting that "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." Id. That warning is germane here. We uphold the Board's factual determinations underlying the denial of the motion to reopen if they are "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Zheng v. Att'y Gen. of U.S., 549 F.3d 260, 266 (3d Cir. 2008) (quoting Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

We will deny the petition for review. A party may file only one motion to reopen and such motion must be filed no later than 90 days after the date of the removal order. 8 C.F.R. § 1003.2(c)(2); 8 U.S.C. § 1229a(c)(7)(C)(i). Singh's motion to reopen was filed more than 90 days after the Board's original decision, was untimely, and thus was properly denied on this basis. The 90-day time limitation does not apply if the alien seeks reopening "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." Id. at § 1003.2(c)(3)(ii). See also 8 U.S.C. § 1229a(c)(7)(C)(ii). Under the standards we set forth in Zheng, 549 F.3d 260, the Board must explicitly consider any country conditions evidence that materially bears on an applicant's claim, see id. at 268.

5

We conclude that the Board acted within its discretion in denying Singh's motion to reopen as untimely filed because he failed to show changed country conditions in India sufficient to exempt him from the 90-day deadline. As a threshold matter, we are confident that the Board fully considered Singh's new evidence. In his motion, Singh supported his claim of changed conditions with his general declaration, his father's declarations, and more recent general country conditions evidence from India. Singh argues in his Informal Brief that the Board failed to give adequate weight to his father's declarations and failed to consider all of his country conditions evidence. We are not persuaded. Given that the agency had previously rejected as not credible Singh's claim that the police targeted him for persecution, the Board properly declined to place much weight on the new assertions by his father that Singh's life was "still not safe" because the police had "raided" the house and threatened Singh. When the initial asylum application and motion to reopen have the same underlying basis, the Board need not overlook a prior adverse credibility determination in weighing new evidence offered by a member of the alien's family. Cf. Gen Lin v. Att'y Gen. of U.S., 700 F.3d 683, 688 (3d Cir. 2012) (discussing when prior adverse credibility determinations are relevant). The Board determined that the declaration should not be given significant weight and we are not compelled to reach a contrary conclusion, 8 U.S.C. § 1252(b)(4)(B).

Singh further failed to show how his documentary country conditions evidence rehabilitated his credibility, but, even assuming that human rights violations are routinely committed by the police in India, those violations do not mean that the police would now have any particular interest in persecuting Singh. In any event, contrary to his assertions,

6

the Board reasonably concluded that the documentary evidence does not show a material change in conditions in India. Singh's documentary country conditions evidence showed a continuation of certain problems under Congress Party rule. For example, the 2011 Human Rights Watch article on torture in India states that human rights groups have *long* documented the widespread use of torture by the police, and that torture of those in custody in India is routine. A.R. 22-23 (emphasis added). The 2007 Human Rights Report, which Singh submitted in support of his original asylum application, also stated that the police routinely use torture. A.R. 362. See Matter of S-Y-G-, 24 I. & N. Dec. at 253 (in determining whether evidence accompanying motion to reopen demonstrates material change in country conditions that would justify reopening, Board compares evidence of country conditions submitted with motion to that which existed at time of merits hearing). Accordingly, the record evidence shows that conditions are neither better nor worse.

In sum, the denial of Singh's motion to reopen as untimely filed was not arbitrary, irrational, or contrary to law, and thus the Board properly exercised its discretion in denying the motion to reopen. We note that the Board may deny a motion to reopen for failure to establish a prima facie case for the relief sought, in this case asylum. Immigration & Naturalization Serv. v. Abudu, 485 U.S. 94, 105 (1988); Matter of Coelho, 20 I. & N. Dec. 464, 472 (BIA 1992). We further conclude that the Board did not abuse its discretion in determining that Singh did not show in his motion to reopen that he is prima facie eligible for asylum.

For the foregoing reasons, we will deny the petition for review.