**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4504
_____

JIN LONG ZHANG,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(Agency No. A078-712-730)
Immigration Judge: Donald V. Ferlise

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 27, 2014

Before:  McKEE, *Chief Judge*, GREENAWAY, JR. and KRAUSE, *Circuit Judges*.

(Opinion filed: April 2, 2015)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Chief Judge*.

Petitioner Jin Long Zhang filed a petition for review of the October 28, 2013 decision

of the Board of Immigration Appeals denying his motion to reopen as untimely. For the

reasons that follow, we will deny the petition for review.

## I.

Zhang is a native and citizen of China who first entered the United States in 2000.

On January 9, 2001, Zhang was placed in removal proceedings and charged as an alien

unlawfully present in the United States under 8 U.S.C. § 1182(a)(6)(A)(i). On January 4,

2002, Immigration Judge Ferlise denied Zhang's request for asylum, withholding of

removal, and relief under the CAT.[1] This initial request was based on a claim of persecution

under China's coercive population control policies. On September 16, 2003, the BIA

partially affirmed the decision of the Immigration Judge.[2]

In August 2013, Zhang filed a motion to reopen seeking to reapply for asylum,

withholding of removal, and CAT relief. The basis for this motion was a claim of changed

---

[1] The Immigration Judge, Donald V. Ferlise, also found that Zhang filed a frivolous application for asylum. (J.A. at 19.) As we note below, the BIA disagreed with that finding.

[2] The BIA found that the Immigration Judge "correctly determined that [Zhang]'s asylum application [was] time barred under the regulations and that none of the exceptions applie[d]." (J.A. at 16.) However, the BIA also stated that it "d[id] not find [Zhang] filed a frivolous application for asylum as stated by the Immigration Judge." *Id.* This is not, by a long stretch, the first time that the BIA or this Court has concluded that Judge Ferlise's finding of a frivolous petition was groundless. Nor is he any stranger to criticism from this Court. *See Cham v. Att'y Gen.*, 445 F.3d 683, 691–94 (3d Cir. 2006); *Shah v. Att'y Gen.*, 446 F.3d 429, 434–37 (3d Cir. 2006); *Sukwanputra v. Gonzales*, 434 F.3d 627, 637–38 (3d Cir. 2006); *Fiadjoe v. Att'y Gen.*, 411 F.3d 135, 154–58 (3d Cir. 2005). These cases are only some of the precedential opinions that have criticized Ferlise. We need not also cite the not precedential opinions where we have been troubled by his handling of cases before him or his proclivity for declaring that asylum claims are "frivolous."

2

country conditions in China and Zhang's fear of persecution based on his being a practicing Catholic. On October 28, 2013, the BIA denied the motion, declaring it untimely. This petition for review followed.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252 to review the Board's decision denying the motion to reopen. Where the BIA issues a decision on the merits, we review the BIA's decision and not the Immigration Judge's decision. *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006) (citing *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002)).[3]

Where the BIA concludes that a petitioner has not made a prima facie showing for a motion to reopen proceedings, we review the BIA's findings of fact under the substantial evidence standard. *Sevoian v. Ashcroft*, 290 F.3d 166, 174 (3d Cir. 2002). Under the substantial evidence standard, we must uphold the BIA's factual findings "unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir. 2001) (citation omitted). Although "adverse credibility determinations cannot be based on speculation or conjecture, such a finding will be afforded substantial deference" where the BIA provides "specific cogent reasons" grounded in the

---

[3] However, to the extent that the BIA substantially relied on the Immigration Judge's adverse credibility determination, we have jurisdiction to review both opinions. *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004).

record to support those determinations. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003).[4]

We review the ultimate denial of a motion to reopen for abuse of discretion. *Pllumi v. Att'y Gen.*, 642 F.3d 155, 158 (3d Cir. 2011). The BIA abuses its discretion only where it acts in a manner that is "arbitrary, irrational, or contrary to law." *Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006) (quoting *Sevoian*, 290 F.3d at 174) (internal quotation marks omitted).

## III.

The BIA denied Zhang's motion as untimely. A motion to reopen ordinarily must be filed with the BIA "within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i). However, an exception exists and the time limitation does not apply where the motion to reopen is based on "changed country conditions arising in the country of nationality . . . if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii). The question of whether there is sufficient evidence of changed country conditions is a threshold issue. *Shardar v. Att'y Gen.*, 503 F.3d 308, 312 (3d Cir. 2007). Accordingly, Zhang must produce evidence showing a change in country conditions to show that the motion to reopen is timely and may be argued. *Id.* If this threshold is established, we can then inquire into whether the evidence makes out a prima facie case for asylum. *Id.*

---

[4] "Adverse credibility determinations may be based on 'inconsistent statements, contradictory evidence, and inherently improbable testimony.'" *Cao v. Att'y Gen.*, 407 F.3d 146, 152 (3d Cir. 2005) (quoting *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003)).

In support of Zhang's contention that changed country conditions justify his motion to reopen, Zhang submitted the following for the BIA's consideration:

- The U.S. State Department's 2012 International Religious Freedom Report for China ("Religious Freedom Report");

- Recent news articles describing conditions in China for Christians and Catholics from *Voice of America*, *Fox News*, and *Gateway News*;

- Letters from Zhang's wife and a neighbor in China; and

- A certification describing Zhang's history with the Fuzhou Catholic Archdioceses of Fujian Province ("Fujian Province Certificate").

As to the Religious Freedom Report, the BIA acknowledged Zhang's evidence of "detention of some leaders of underground, or 'house,' churches and harassment of church members." (J.A. at 11.) However, the BIA ultimately ruled against Zhang because it concluded that he had not established that "the arrest of some leaders of underground churches and harassment of church members demonstrates that he will likely suffer mistreatment amounting to persecution upon his return to China based on his practice of Christianity as a Catholic." (J.A. at 11.)

The BIA was further not convinced by the letters from Zhang's wife and neighbor and the Fujian Province Certificate because they "[were] unsworn statements that appear[ed] . . . created for the purpose of litigation and [were] from interested witnesses who [were] not subject to cross-examination." (J.A. at 12.) According to the BIA, the documents were from persons "of essentially unknown reliability and, given [Zhang]'s previous lack of candor, . . . they have [not] been shown to be of sufficient evidentiary worth to support reopening these proceedings." (J.A. at 12.)

5

Although we are not without some reservations, as we note below, the BIA's factual findings are entitled to substantial deference. Accordingly, we agree that the motion to reopen was correctly denied.

We have stated that substantial reliance on State Department reports is justified and that such reports are sometimes the best resource for determining country conditions. *Kayembe v. Ashcroft*, 334 F.3d 231, 235 (3d Cir. 2003) (citing *Lal v. INS*, 255 F.3d 998, 1023 (9th Cir. 2001)). However, we find the BIA's analysis of the Religious Freedom Report troublesome, as portions of the report that seem to indicate changed country conditions appear not to have been considered by the BIA. For instance, the BIA failed to address a portion of the Religious Freedom Report that indicates that religious adherents have been "harassed, detained, arrested, or sentenced to prison . . . for activities . . . related to their religious beliefs and practice." (A.R. 268–69.) This statement, among others, appears to directly relate to and support Zhang's claim of changed country conditions in China.

However, the failure to specifically cite this portion and other pertinent portions of the Religious Freedom Report does not amount to an abuse of discretion. "The BIA must consider the evidence presented to it, but it need not expressly parse each piece of evidence submitted in its opinion." *Zhao v. Att'y Gen.*, 386 F. App'x 37, 39 (3d Cir. 2010). This case is similar to *Kayembe*. There, the petitioner claimed that the BIA "failed to consider the record as a whole." *Kayembe*, 334 F.3d at 235. While the BIA cited portions of the country report, the report contained additional data indicative of changed country conditions that was not considered by the BIA. *Id.* Nevertheless, in *Kayembe*, we explained that "[j]ust

6

because the State Department report cuts both ways [ ] does not mean that it does not constitute substantial evidence." *Id.* at 236. While the additional information provided in the Religious Freedom Report does appear to support a contrary conclusion, it does not *compel* a contrary conclusion as it must if Zhang is to prevail under the substantial evidence standard.

The analysis the BIA engaged in to discredit the letters and the Fujian Province Certificate is also troublesome. As previously noted, the BIA referenced Zhang's "previous lack of candor" in determining the evidentiary worth of these letters and the Fujian Province Certificate. (J.A. at 12.) However, we have held that reliance on prior adverse credibility determinations is improper where "the basis for the [ ] credibility assessment [is] utterly unrelated to [the] later claim." *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004); *cf. Lin v. Att'y Gen.*, 700 F.3d 683, 688 n.3 (3d Cir. 2012) (permitting reliance on prior adverse credibility determinations where the motion to reopen is based "on the same underlying basis for asylum"). As Zhang's initial basis for asylum (China's family planning policy) is unrelated to the basis for the motion to reopen (religious persecution), such previous adverse credibility determinations were improperly considered. Nevertheless, consideration of the evidence without reference to any previous lack of candor on the part of Zhang still does not *compel* a contrary conclusion as to the worth of the evidence determined by the BIA.

The BIA also did not consider the news articles provided by Zhang which demonstrate the worsening conditions for Catholics in China. The BIA must "meaningfully consider[ ] the evidence and arguments [the alien] present[s]." *Zhu v. Att'y Gen.*, 744 F.3d 268, 272 (3d Cir. 2014) (citing *Zheng v. Att'y Gen.*, 549 F.3d 260, 266 (3d Cir. 2008)).

"This does not mean that the BIA is required to expressly parse each point or discuss each piece of evidence presented, but it may not ignore evidence favorable to the alien." *Id.* (quoting *Huang v. Att'y Gen.*, 620 F.3d 372, 388 (3d Cir. 2010)) (internal quotations and citation omitted).

The news articles provided undoubtedly support Zhang's argument that the conditions in China have changed such that a practicing Catholic would fear persecution.[5] However, the BIA did not appear to consider these news articles at all, and, if they were considered, there was no explanation provided for why they were rejected. This lack of consideration and failure to explain why certain evidence was rejected has previously been grounds for remanding to the BIA to consider such evidence and determine its authenticity, relevance, and weight. *Zhu*, 744 F.3d at 275. However, this lack of consideration is not grounds for remand here.

Despite the reservations we have expressed, in the final analysis, it is clear that the BIA did not abuse its discretion in denying Zhang's request to reopen. In doing so, the BIA quite properly noted inconsistencies in Zhang's statements that caused it to appropriately question Zhang's assertion that he is a practicing Catholic. The BIA explained: "[h]e asserts that he has been a practicing Catholic for almost 30 years, both in China and in the United States, but in his asylum application filed in 2000, [Zhang] claimed that he was not a

---

[5] As noted in Zhang's brief, the *Voice of America* article dated April 22, 2013 indicated "that the situation for religious freedom in China continues to worsen." The *Fox News* article dated February 21, 2013 states that "there have been new tactics of persecution . . . to eradicate house churches." The *Gateway News* article dated March 7, 2013 indicates that "China's crackdown against its thriving home church movement is surging."

member of any religion." (J.A. at 10.)  The BIA also noted that "his household registration booklet has a blank space for his religion."  *Id.*  These inconsistencies seriously undermine Zhang's claim of abuse of discretion and support the BIA's denial of the motion to reopen. For any findings of changed country conditions to be material, the BIA had to find that Zhang is a practicing Catholic, as he claims.  If Zhang is not a practicing Catholic and does not follow the Christian faith, whether or not circumstances have changed in China for practicing Christians has no bearing on his claim of asylum based on religious persecution.

While the inconsistencies relating to Zhang's faith do not appear to be the BIA's principal reason for denial of the motion to reopen, they are, by themselves, sufficient to defeat his claim of an abuse of discretion in refusing to reopen his claim for asylum.

## IV.

For the reasons set forth above, we agree that Zhang has not shown that his untimely motion to reopen should be considered because of changed country conditions and we conclude that the BIA did not abuse its discretion in concluding that the attempt to reopen was untimely under 8 U.S.C. § 1229a(c)(7)(C).