NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-1301
_____

DI LI LI
a/k/a FA DU
a/k/a DE LI LI,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(Agency No. A077-341-145)
Immigration Judge: Donald V. Ferlise

Submitted pursuant to Third Circuit LAR 34.1(a)
January 12, 2015

BEFORE: McKEE, *Chief Judge,* HARDIMAN and
SCIRICA, *Circuit Judges*

(Opinion filed: September 15, 2015)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Chief Judge*.

Di Li Li has filed a petition for review of the January 14, 2014, order of the Board of Immigration Appeals denying his motion to reopen his immigration proceedings. For the reasons that follow, we will vacate the BIA's order and remand for proceedings consistent with the opinion.[1]

## I.

There is no time limit for filing a motion to reopen with the BIA where the motion is based on changed country conditions and the supporting evidence could not have been discovered or presented at the previous proceeding. 8 U.S.C. § 1229a(c)(7)(C)(ii). The BIA found that Li's untimely motion did not meet this exception and that Li had not established a prima facie case for protection under the CAT. It also declined to exercise its discretionary powers to *sua sponte* reopen the removal proceedings.

Li alleges that, since his final order denying his application for relief, he has become a devout Christian and would face religious persecution should he be returned to China. Li's decision to convert to Christianity is a change in his personal circumstances, which is insufficient by itself to excuse the 90-day time limit on the motion to reopen.

---

[1] We review the BIA's denial of a motion to reopen for abuse of discretion. *See Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004). The BIA abuses its discretion when its decision is "arbitrary, irrational, or contrary to law." *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994). "An abuse of discretion may be found in those circumstances where the Board's decision provides no rational explanation, inexplicably departs from established policies, is devoid of reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary of capricious manner." *Shardar v. Att'y Gen.*, 503 F.3d 308, 316 (3d Cir. 2007).

2

*See Liu v. Att'y Gen.*, 555 F.3d 145, 151-52 (3d Cir. 2009). His "choice to engage in such [religious] activities after being ordered deported does not support application of the changed country conditions exception." *Khan v. Att'y Gen.*, 691 F.3d 488, 497 (3d Cir. 2012). Therefore, the relevant inquiry is whether Li has presented sufficient evidence which was previously unavailable or undiscoverable to demonstrate a material change in the treatment of Christians in China since his asylum hearing. *See Liu*, 555 F.3d at 150-51.

Although Li bears the burden of proof, 8 C.F.R. § 1208.13(a), the Board "ha[s] a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim," and "[a] similar, if not greater, duty arises in the context of motions to reopen based on changed country conditions." *Zheng v. Att'y Gen.*, 549 F.3d 260, 268 (3d Cir. 2008) (citation omitted). To support his contention that country conditions have changed since 2004, Li provided numerous State Department Country and International Religious Freedom Reports, China Aid Association reports, and research articles, as well as a 2005 Law of the People's Republic of China on Penalties for Administration of Public Security, a 2008 Notice from the Ministry of Public Security, and a 2008 Church Order of Protestant Churches in China. In his motion, Li relied heavily on country reports from 2003 through 2011, highlighting specific information from each report which he argued demonstrated changed conditions over time.

Li argues that the Board failed to meaningfully consider all of the evidence in the record. In its opinion, the Board stated that Li "cites the 2003-2009 Country Reports on

3

China, but he does not offer those documents to support his motion." Op. at 2. It is unclear from this statement, nor is it clear from the opinion, whether the Board considered these reports – which were quoted at length in Li's motion to reopen – despite its conclusion that Li failed to provide them. Moreover, we are hard pressed to understand the BIA's statement that this evidence was presented, but Li did not rely on it.

In *Liu v. Holder*, the Board's opinion contained nearly an identical comment regarding citations to reports which were not offered as evidence. *Liu*, 718 F.3d 706, 710 (7th Cir. 2013). The Seventh Circuit determined the petitioner in that case had submitted the evidence, but opined that she did not have to, noting that "it was enough for her to cite them since they are public documents to which the Board has ready access." *Id*. In *Abassi v. INS*, 305 F.3d 1028, 1031 (9th Cir. 2002), the petitioner made references to "Country Reports," but failed to provide them. The Ninth Circuit held that, although the petitioner has the burden of proof, he is not required "to attach a government report that is easily available to the BIA." *Id*. Given these cases, it is arguable here that, where the petitioner has quoted at length information which the Board could easily verify from readily available public documents, the Board erred in not taking administrative notice of the missing reports.

Moreover, it does not appear that the Board appreciated the extent of the evidence. Country Reports for 2003 and 2004 were part of the administrative record. *See* A.R. at 550-81 & 582-633. Failure to consider these reports could be a denial of due process. *See Abdulai v. Ashcroft*, 239 F.3d 542, 549-50 (3d Cir. 2001). This is particularly true because the Board had a duty to compare the most recent conditions with the country

4

conditions that existed at the time of Li's 2005 hearing. *See Filja v. Gonzales*, 447 F.3d 241, 252-54 (3d Cir. 2006) (noting that the Board's point of reference when evaluating whether country conditions have changed is the time of the hearing before the IJ).

Although the Board need not "write an exegesis on every contention" raised, it must provide sufficient analysis to allow us to conclude that it "has heard and thought and not merely reacted." *Id*. at 256. Here, the Board failed to address Li's arguments as to how conditions have worsened over time, and that mistreatment of church members has not been limited to harassment. Specifically, *inter alia*, Li outlined the following from State Department reports:

> In 2003-2006: "leaders of unauthorized groups were sometimes the targets of harassment, interrogation, detention, and physical abuse."

> In 2006 & 2008: "Authorities disrupted church meetings and retreats; detained, beat, and harassed leaders and church members; and confiscated the personal property of church leaders and members. . . . [T]here were numerous reports of detention and harassment of unregistered Protestant groups."

> In 2010: "The government detained, arrested, or sentenced to prison a number of religious leaders and adherents for activities related to their religious practice. These activities included assembling for religious worship, expressing religious beliefs in public and in private, and publishing religious texts.

>> "Local authorities often used administrative detention, such as confinement at reeducation through labor (RTL) camps, to punish members of unregistered religious groups."

>> "Unregistered religious believers and Falun Gong adherents were among those housed with mentally ill patients in [high-security psychiatric hospitals]."

5

A.R. 23-27.  The failure to address this evidence is magnified by the fact that the Board quite correctly acknowledged that "reports on country conditions are highly probative evidence and are usually the best source of information on conditions in foreign nations." Op. at 2.  Because, at a minimum, the Board failed to adequately explain its decision that conditions had not materially worsened, we cannot meaningfully review the petition.  *See Zheng*, 549 F.3d at 268-69 (vacating the Board's decision where it failed to sufficiently explain the basis for its decision).

Finally, in support of his motion to reopen, Li provided an affidavit from a fellow church member alleging that the member had been persecuted by Chinese authorities for attending an underground church.  The Board discounted this evidence, stating: "[C]onsidering in part [Li's] previous lack of candor, we do not find it to have been shown to be of sufficient evidentiary worth to support reopening these proceedings."  Op. at 3.  However, the prior adverse credibility determination related to Li's family planning claim.  That was "utterly unrelated" to his religious persecution claim.  *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004) (holding each adverse credibility finding must be justified with statements or record evidence "specifically related to the issue under consideration"); *see also Lin v. Att'y Gen.*, 700 F.3d 683, 688 n.3 (3d Cir. 2012) ("Prior adverse credibility determinations are not always relevant on motions to reopen.").  Therefore, the Board erred in allowing the prior determination to taint its view of his evidence of changed country conditions.  *See Guo*, 386F.3d at 562.  Since we cannot determine the extent to which the Board relied on this prior determination in denying the

6

motion to reopen, we cannot conclude that the error is harmless. *See Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011) (applying harmless error on immigration review "when it is highly probable that the error did not affect the outcome of the case").

## II.

For all the reasons stated above, we will remand to the BIA to allow it to reconsider Li's motion to reopen.[2] *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (holding that a court of appeals should remand rather than decide the "changed circumstances" matter on its own).

---

[2] The Board did not reach the question of whether Li had made prima facie case for asylum. *See Shardar,* 503 F.3d at 312 (noting the two distinct inquiries in evaluating motions to reopen). The Board did find that Li had failed to establish prima facie eligibility for relief under the CAT; however, it provided no basis for that decision. However, because we find that the Board abused its discretion in addressing the evidence of changed country conditions, we need not address the CAT claim.