NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1435
_____

LI ZHANG,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On Appeal from a Decision and Order of the
Board of Immigration Appeals
(Agency No. A097-516-033)
Immigration Judge: Honorable Grace A. Sease


_____

Submitted under Third Circuit LAR 34.1(a)
October 8, 2013

BEFORE:  FUENTES, GREENBERG, and BARRY, Circuit Judges

(Filed: November 14, 2013)
_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

I.  INTRODUCTION

This matter comes on before this Court on a petition for review of a decision and order of the Board of Immigration Appeals (the "BIA"), denying a motion to reopen immigration proceedings raising the question of whether changed country conditions in China excuse procedural defects in a motion to reopen the proceedings. Petitioner, Li Zhang, unlawfully entered the United States in 2004 but in removal proceedings an immigration judge ("IJ") entered an order that the BIA upheld ordering Zhang removed. Zhang nonetheless remained in the United States and, seven years later, filed a motion that has led to the petition now before us to reopen her case. Although Zhang conceded that under 8 C.F.R. § 1003.2(c)(2) her motion was both untimely and successive, she argued that the BIA nevertheless should have considered it on its merits because she satisfied the exception to the § 1003.2(c)(2) bars on the basis of changed country conditions in China. The exception might have applied if Zhang provided evidence of changed circumstances in China that could not have been presented at her prior hearing and was material to her ultimate claim for relief. Specifically, Zhang, who converted to Catholicism after she arrived in the United States, argued to the BIA that she would be persecuted for her religious beliefs and practices if removed to China. The BIA held that Zhang had failed to establish changed country conditions and consequently denied her motion to reopen as both time- and number-barred.

We conclude that the BIA did not abuse its discretion in rejecting Zhang's motion to reopen. We agree that the individualized evidence Zhang presented in support of her motion was not authenticated properly and thus the BIA did not err when it did not consider it in deciding her motion. Based on the other evidence in the record, we

2

conclude that the BIA properly rejected Zhang's motion to reopen because she rested her motion primarily on assertions of what were changed personal circumstances and the evidence she presented did not establish that conditions had worsened for Christians in China since 2004.

## II. BACKGROUND

In 2004, Zhang left China with her young son, Si Liang, and entered the United States. Because she did not have a valid entry document, she was charged as removable on June 28, 2004. In the ensuing proceedings, Zhang conceded that she was removable, but petitioned for relief from removal, arguing that she qualified for asylum, withholding of removal, and protection under the Convention Against Torture based on China's family planning policy. At a hearing before an IJ, Zhang testified that, after giving birth to her first son, she attempted to have more children, but Chinese officials forced her to terminate two subsequent pregnancies. Zhang asserted that she came to the United States with her son because she wanted to have more children, but feared being compelled to have abortions in the future and feared being subjected to forced sterilization. The IJ found her testimony not to be credible and denied Zhang's petition on October 12, 2004, citing Zhang's demeanor at the hearing and discrepancies between her asylum application and her testimony. On March 10, 2005, the BIA upheld the IJ's ruling on appeal, both as to the merits of Zhang's application and the IJ's adverse credibility finding.

Zhang timely moved for the BIA to reopen her case. Zhang presented testimony from various witnesses to clarify the discrepancies that the IJ had found determinative in making the adverse credibility determination. The BIA denied her motion on May 11, 2005, because the proffered evidence was neither previously unavailable nor undiscoverable prior to the hearing before the IJ. Zhang did not seek judicial review of this ruling, but she nevertheless unlawfully remained in the United States.

On April 27, 2012, Zhang filed a second motion requesting that the BIA reopen her case. Although Zhang acknowledged that the motion was both untimely and successive, and thus ordinarily would have been procedurally defective, she contended that the BIA should consider her motion based on evidence of changed circumstances in China. Specifically, Zhang argued that she faced a well-founded fear of persecution in China based on her religious beliefs and practices.[1] Zhang pointed out that her husband, Yi Jian Chen, is a Catholic, and Zhang claimed that he fled to the United States in September 2008 after facing religious persecution for attending an underground church in China. Under his

---

[1] Zhang also argued that her motion should be reopened because of changes in her family circumstances, including the birth of her second child, Stanley, in this country. App. at 50-52 (presenting arguments regarding her fear of forced sterilization as a result of her violation of China's one-child policy). However, these circumstances are not relevant to establishing changed conditions in China that would excuse the procedural defects in her motion. See Khan v. Att'y Gen., 691 F.3d 488, 497-98 (3d Cir. 2012) (explaining that changed personal conditions are insufficient bases on which to excuse violations of the time and numerical limitations on motions to reopen). Because we find those defects dispositive, we do not address Zhang's contentions regarding her family circumstances.

influence, Zhang converted to Catholicism in the United States, and was baptized on December 25, 2011, and her two sons were baptized in 2010 and 2012. Zhang and her family regularly attend a Catholic church in New York.

Zhang claimed that, if removed to China, she would need to attend an underground "house" church in order to practice Catholicism. She also presented evidence that Chinese officials had been increasing their repression of persons attending house churches in recent years, and included reports demonstrating that some religious leaders and worshippers had been imprisoned and even tortured. As evidence for this persecution, Zhang included letters from friends and relatives in China who claimed to have faced mistreatment because of their religious beliefs, Chinese documents corroborating some aspects of the letters, various articles from publications, and several State Department country reports. According to Zhang, her husband was granted withholding of removal on the basis of this potential future persecution, although the record in this case does not reflect the reasons behind the decision in his case.

The BIA denied Zhang's motion to reopen on January 31, 2013, holding that Zhang had failed to establish that changed conditions in China justified an exception to the time and numerical limitations for filing motions to reopen. In reaching its result the BIA first declined to credit the official Chinese documents that Zhang presented because they had not been authenticated. The BIA also refused to credit the letters Zhang submitted from Chinese friends and relatives, finding that they were not substantiated and "appeared to be created for the

5

purpose of litigation." App. at 5. Relying on Zhang's other evidence, primarily the State Department reports, the BIA concluded "that [Zhang] has not shown that the arrest of leaders of underground churches and harassment of church members demonstrates that she will suffer mistreatment amounting to persecution upon her return to China based on her practice of Christianity." App. at 6.

Zhang timely petitioned for review of this ruling on February 15, 2013. On May 14, 2013, we granted her request for a stay of removal pending disposition of her petition.

## III. JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction over the motion to reopen under 8 C.F.R. § 1003.2(a). We have jurisdiction over this petition pursuant to 8 U.S.C. § 1252(a)(1), which explicitly confers jurisdiction to review final orders of removal on the courts of appeals and implicitly confers jurisdiction to review the denial of motions to reopen. See Khan v. Att'y Gen., 691 F.3d 488, 492-93 (3d Cir. 2012) (citing Cruz v. Att'y Gen., 452 F.3d 240, 246 (3d Cir. 2006)).

Motions to reopen immigration proceedings are "traditionally disfavored," Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001), and should be "granted only under compelling circumstances," Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004). The existence of this high threshold is especially appropriate in removal proceedings, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." INS v. Doherty, 502 U.S. 314, 323, 112

6

S.Ct. 719, 724-25 (1992). In light of these concerns, our review of the BIA's denial of a motion to reopen is "highly deferential: we review . . . for abuse of discretion." Guo, 386 F.3d at 562. We will uphold the BIA's denial of Zhang's motion to reopen unless it is "arbitrary, irrational, or contrary to law." Id. (internal quotation marks omitted). We review the BIA's legal conclusions de novo, and its factual findings relating to the motion to reopen for substantial evidence.[2] See Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006).

## IV. DISCUSSION

Motions to reopen should be granted only if the movant presents new evidence that is both material and "could not have been discovered or presented at" the previous hearing. 8 C.F.R. § 1003.2(c)(1).[3] Motions to reopen are limited in both time and number: "a party may file only one motion to reopen" immigration proceedings, and "that

---

[2] In Shardar v. Att'y Gen., 503 F.3d 308, 313 (3d Cir. 2007), we stated that "[f]acts presented in the motion to reopen are 'accepted as true unless inherently unbelievable.'" (quoting Bhasin v. Gonzales, 423 F.3d 977, 987 (9th Cir. 2005)). This standard referred only to testimony provided by an applicant in a sworn affidavit and applied only to a petitioner's prima facie case for relief. With respect to the standard for establishing changed country conditions, the BIA has "a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim." Zheng v. Att'y Gen., 549 F.3d 260, 268 (3d Cir. 2008).

[3] Zhang also requested that the BIA review her petition sua sponte under 8 C.F.R. § 1003.2(a), but the BIA implicitly denied this request. We lack jurisdiction to review the BIA's decision to deny a motion to reopen proceedings sua sponte "[b]ecause the BIA retains unfettered discretion to decline to sua sponte reopen or reconsider a deportation proceeding." Calle-Vujiles v. Ashcroft, 320 F.3d 472, 475 (3d Cir. 2003). But see Chehazeh v. Att'y Gen., 666 F.3d 118, 127-28 (3d Cir. 2012) (distinguishing Calle-Vujiles v. Ashcroft and holding that BIA's decision to reopen proceedings sua sponte is reviewable). Of course, it is obvious from our opinion, that even if we reviewed the BIA's refusal to review her petition sua sponte, we would not disturb its refusal to do so.

7

motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). There is an exception to the time and numerical bars, however, where a petitioner shows "changed circumstances, in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii).

Zhang concedes that her second motion to reopen was both time- and number-barred. She hardly could avoid doing so as she filed it more than seven years after the BIA issued its final ruling in her case, and she previously had filed an unsuccessful motion to reopen. To overcome these bars, Zhang was required: (1) to produce evidence showing changed conditions in China; (2) to demonstrate that the evidence is material to her ultimate claims for relief from deportation; and (3) to "establish that the evidence was not available and could not have been presented at the previous proceeding." Abulashvili v. Att'y Gen., 663 F.3d 197, 202-03 (3d Cir. 2011) (citing 8 C.F.R. § 1003.2(c) . After discounting much of Zhang's evidence, the BIA concluded that she had failed to show that changed country conditions excused the procedural defects in her motion, which it thus dismissed as both time- and number-barred.

Zhang presents three arguments to support her petition. She contends that the BIA: (1) improperly determined that she had not authenticated particular evidence; (2) did not compare circumstances in China in 2004 and the present; and (3) erred in concluding that she had not made out a prima facie case for withholding of removal.

8

We are not persuaded that the BIA abused its discretion. First, we conclude that the BIA properly declined to credit certain evidence because Zhang failed to authenticate official documents, and submitted letters from China without explaining why other corroborating materials had been unavailable. Second, we find that Zhang's claim rests primarily on a change in personal circumstances, and we agree with the BIA's determination that Zhang failed to establish changed country conditions in China and, accordingly, correctly denied her motion to reopen as time- and number-barred. Because these conclusions properly led the BIA to deny Zhang's petition, we will not address the sufficiency of her prima facie case for relief from removal.

A. Authentication of Evidence

Zhang presented two types of evidence: individualized evidence, including letters from friends and family in China and official documents associated with those letters, and generalized evidence, including articles from publications and State Department reports discussing China. The BIA did not credit her individualized evidence. The BIA refused to consider the official documents that Zhang submitted because they had not been authenticated, either under 8 C.F.R. § 1287.6 or in some other manner. The BIA also refused to credit the unsworn letters, finding that they had not been "meaningfully authenticated, appear to be created for the purpose of litigation, and are from interested witnesses not subject to cross-examination." App. at 5-6.[4]

---

[4] The BIA, in rejecting the letters, also "consider[ed] in part" Zhang's "previous lack of candor." App. at 6. An adverse credibility determination must be "supported by specific cogent reasons" that "bear a legitimate nexus to the finding." Guo, 386 F.3d at 562-63 (quoting Gao v. Ashcroft, 299 F.3d 266, 276 (3d Cir. 2002) (internal quotation

9

Under applicable regulations, evidence in the form of official records submitted in support of petitions for relief from removal must be authenticated. 8 C.F.R. § 1287.6(a). To authenticate official records—such as the birth and marriage certificates, identity cards, fee notices, receipts, and village committee certificates of the kind that Zhang submitted to support the letters of her friends and family—a petitioner must show that the documents are "evidenced by an official publication" or certified by a U.S. Foreign Service officer stationed in China. 8 C.F.R. § 1287.6. But satisfying § 1287.6 is "not the exclusive means of authenticating [official] records," and, in some circumstances, petitioners may authenticate official documents "through other means," particularly where the petitioner attempted to comply with the regulations but government officials refused to cooperate. Gui Cun Liu v. Ashcroft, 372 F.3d 529, 532-33 (3d Cir. 2004). In Gui Cun Liu, for example, we found that the petitioner could authenticate abortion records using alternative means because she had attempted to authenticate the records under § 1287.6, but Chinese officials refused to cooperate with her in this attempt. Id. at 530. Similarly, in Leia v. Ashcroft, 393 F.3d 427, 435 (3d Cir. 2005), we remanded the

---

marks omitted)). An adverse credibility finding on a prior claim that is unrelated to an applicant's present claim does not have such a nexus. Id. at 563 (finding that the BIA improperly relied on adverse credibility determination as to religious claim in adjudicating family planning claim). Here, the IJ's adverse credibility finding related to Zhang's family planning claim, and her current petition included both family planning and religious claims. To the extent that the BIA relied on the prior credibility finding in rejecting evidence relating to Zhang's religious claim, it was in error. However, the BIA expressly stated that it relied on credibility only "in part" and provided several other, independently sufficient reasons for rejecting the individualized testimony. Accordingly, we conclude that any error based on credibility findings was harmless.

case to the BIA for reconsideration after it refused to consider expert testimony explaining why authentication was impossible.

We recently clarified that authentication through alternative means is available only where "the petitioner attempted, but failed, to authenticate documents, or otherwise demonstrated that it was not reasonable to expect [her] to provide authenticated documents." Lin v. Att'y Gen., 700 F.3d 683, 687 (3d Cir. 2012). In Lin, we refused to remand the case for reconsideration of the denial of relief because the petitioner had not provided evidence either that he attempted to authenticate the documents or that such an attempt would have been futile. Id. Here, as in Lin, the BIA properly refused to consider the official documents Zhang submitted because she did not produce evidence showing why § 1287.6 should not apply. [5]

Zhang also submitted individualized testimony in the form of letters from friends and family in China who allegedly had faced persecution because of their practice of their religion. App. at 156-57 (letter from cousin who was sterilized forcibly and persecuted as member of underground church); id. at 170 (letter from friend stating he was detained and tortured for his membership in an underground Catholic church). The BIA "decline[d] to credit" these statements, noting that they were unsworn and not supported by corroborating evidence, such as "police reports, arrest records, detention release certificates, medical records, or statements of others present." Id. at 5. Overall, the BIA

---

[5] We also note that Zhang did not attempt or request any of the possible alternative means of authentication we have discussed, such as "forensic testing of the original certificates, . . . tak[ing] additional testimony, seek[ing] guidance from State Department reports, or evaluat[ing] the efforts [she] took in attempting to avail [herself] of the regulatory certification procedure." Gui Cun Liu, 372 F.3d at 534 n.9.

11

concluded that the documents were not of "sufficient evidentiary worth to support reopening these proceedings." Id. at 5-6.

We find that this conclusion was not "arbitrary, irrational, or contrary to law." Filja, 447 F.3d at 251 (citation and internal quotation marks omitted). These letters are not supported by documentary evidence, do not mention specific times, dates, or locations for the purported persecution, and, by tracking the elements required to reopen proceedings, appear to have been written exclusively for use in American immigration proceedings. To support their credibility, Zhang offers only the identification cards for the letters' authors, and copies of the envelopes in which the letters were sent from China. Given the broad, unsupported allegations these letters contain, this information is insufficient for us to conclude that the BIA abused its discretion by discrediting them.

Zhang urges us to reject the BIA's ruling on the individualized evidence on the basis of a recent opinion from the Court of Appeals for the Seventh Circuit, Shu Han Liu v. Holder, 718 F.3d 706 (7th Cir. 2013). There, the court chastised the BIA for failing to credit letters regarding religious persecution in China similar to those that Zhang presented in this case. Id. at 712. The court explained that the statements were "consistent with evidence credited in official reports, and the writer would no more have dared to swear to its truth before a notary public than he would have dared to ask the police for a record of his arrest or a receipt for the fine he was forced to pay." Id. The court concluded that, because notaries were members of the ruling Communist Party, it would impose an "'arbitrarily high threshold to require that letters attesting to

12

government abuse and admitting membership in a persecuted organization be notarized.'" Id. (quoting Yu Yun Zhang v. Holder, 702 F.3d 878, 881 (6th Cir. 2012)).

We agree with the Shu Han Liu court's concern that impractical authentication requirements may impose an insurmountable burden on aliens seeking relief from removal. Indeed, we noted as much when we held that the requirements of § 1287.6 were not the exclusive means of authenticating official records. Gui Cun Liu, 372 F.3d at 532. But the BIA did not base its refusal to credit the letters exclusively on the fact that the letters had not been notarized; rather, its decision detailed a litany of reasons that led it to conclude that the letters were of limited evidentiary value. In this regard, it indicated that the letters were not supported by other documents, they appeared to have been created for the purpose of litigation, and their authors were not available for cross-examination. We recognize that curing some of these defects, such as producing official arrest records, may be impossible—and we do not think that a petitioner should be required to take impossible steps. Nevertheless, if Zhang could not obtain records to corroborate her witnesses' statements, she should have provided evidence showing either that (1) she attempted to obtain the records but failed, or (2) it would have been impossible to obtain the records. Lin, 700 F.3d at 687. But she did not present such evidence. Absent other evidence to confirm their allegations, the BIA did not abuse its discretion in refusing to credit the letters. For these reasons, we find that the BIA properly excluded Zhang's individualized evidence from China.

B. Changed Country Conditions

Although conceding that her motion to reopen was both time- and number-barred, Zhang argues that the BIA nonetheless should have considered her motion on the merits because it satisfied the exception in 8 C.F.R. § 1003.2(c)(3)(ii) for changed country conditions. Specifically, Zhang argued that she will be forced to join an underground, or "house," church in China, and that in the time following her original application, the Chinese government has subjected leaders and worshippers of underground churches to increasing levels of persecution. In a decision based primarily on the State Department reports that Zhang had provided, the BIA concluded that Zhang's evidence was insufficient to show that she would "suffer mistreatment amounting to persecution upon her return to China based on her practice of Christianity." App. at 6.

We base our review on the record presented to the BIA in this case. 8 U.S.C. § 1252(b)(4)(A); see Nbaye v. Att'y Gen., 665 F.3d 57, 59 (3d Cir. 2011) (recognizing that "§ 1252(b)(4)(A) requires that a court of appeals decide a petition for review of an order of removal only on the record on which the order was entered"). And, on this record, we find for several reasons that the BIA did not err.

First, Zhang's claim appears to be founded, at its core, on changed personal circumstances and not changed country conditions. We have held that "where an alien intentionally alters his or her own circumstances, knowing that he or she has been ordered removed from the United States," the exception to the time limitation on filing motions to reopen "does not properly apply." Khan, 691 F.3d at 498.[6] In Khan, the

---

[6] Although Khan addressed a motion to reopen in the asylum context and focused on 8 U.S.C. § 1229a(c)(7)(ii) the result in that case applies with equal force here because

14

petitioners had moved to reopen their case in part because, after they were ordered removed, they joined a political party that faced persecution in Pakistan, their home country. Id. at 497. We denied their petition for review, explaining that "[t]he petitioners' choice to engage in such political activities after being ordered deported does not support application of the changed country conditions exception." Id. (citing Haddad v. Gonzales, 437 F.3d 515, 517 (6th Cir. 2006) (petitioner's divorce did not trigger exception); Zheng v. Dep't of Justice, 416 F.3d 129, 130-31 (2d Cir. 2005) (birth of petitioner's child did not trigger exception)). We explained in Khan that the rationale for this approach is that "it would be ironic, indeed, if petitioners who have remained in the United States illegally following an order of deportation were permitted to have a second and third bite at the apple." Id. at 498 (quoting Wang v. BIA, 437 F.3d 270, 274 (2d Cir. 2006)) (internal quotation marks and alterations omitted); see also Liu, 555 F.3d 145, 151 (3d Cir. 2009) (noting that permitting motions to reopen based on changed personal circumstances would "extend [petitioner's] time for applying for asylum through her control of her personal circumstances," and that such "gaming of the system" would "circumvent" regulations designed to limit motions for asylum).

The reasoning in Khan and Liu is equally applicable to Zhang's petition: any changed country conditions in China could be relevant to her petition only by reason of her decision to convert to Catholicism. Like the petitioners in Khan who chose to join a political party after being ordered removed from the United States, Zhang chose to

the same standard governs motions to reopen asylum proceedings and motions to reopen withholding of removal proceedings. Compare 8 U.S.C. § 1229a(c)(7)(C)(ii), with 8 C.F.R. § 1003.2(c)(3)(ii).

15

convert to Catholicism years after being ordered removed. It would undermine the strict limitations on motions to reopen to permit Zhang to obtain the reopening of her case based on a subsequent change of circumstances entirely under her control.

Although a motion to reopen based solely on a change in personal circumstances presents a more evident case for dismissal, our case law makes clear that even mixed petitions—presenting changes in both personal and country conditions—ordinarily also should be rejected. See Khan, 691 F.3d at 497-98 (rejecting motion to reopen where petitioners presented change in personal circumstance (joining political party) and in country conditions (increased repression for that party)). We disagree with the opinion of the Court of Appeals for the Seventh Circuit to the extent that it reached an opposite conclusion in Shu Han Liu. In that case, the court determined that there was no basis for treating the petitioner, a recent convert to Christianity, "differently from someone who had converted to Christianity before coming to the United States." Shu Han Liu, 718 F.3d at 709. Because the petition presented both a change in personal circumstances and a change in country conditions, the court concluded that the BIA improperly denied the petitioner's motion to reopen. Id. at 709-10.[7]

We will not make an analysis similar to that of the court of appeals in Shu Han Liu. Rather, we conclude that there is a perfectly plain basis for distinguishing between an applicant who converted to Christianity after being ordered removed and one who was

---

[7] The Court of Appeals for the Seventh Circuit will not excuse untimely motions to reopen based on evidence of changed personal circumstances alone. See, e.g., Chen v. Gonzales, 498 F.3d 758, 760 (7th Cir. 2007).

16

already a Christian prior to such an order—namely, the risk that such an individual would alter her personal circumstances to establish a basis to reopen her case following an adverse decision in an immigration proceeding. Although we do not conclude that a mixed petition always must be rejected, we conclude that the BIA would not have abused its discretion in rejecting the motion in this case as being based on a mixed petition because the claimed change in country conditions, standing alone, could not justify granting the motion.

Second, we conclude that the BIA did not abuse its discretion in holding that Zhang failed to provide sufficient evidence to show that her petition, if reopened, would have been decided differently today than it was decided in 2004. Zhang offered evidence regarding her practice of Catholicism, including an affidavit discussing her recent conversion, app. at 82-83, a brief letter from her pastor acknowledging that Zhang is a "Catholic in good standing" and a "registered parishioner[ ]," id. at 147, baptismal and confirmation certificates for her and her sons, id. at 149-54, and photographs of Zhang at church, id. at 179-80.[8] She also presented some sources claiming that government persecution of underground religious worshippers in China has worsened in recent years,

---

[8] Zhang also provided an affidavit from her husband, Yi Jian Chen, which he submitted in support of his petition for relief from removal. Chen described persecution that he had faced as a member of an underground church, including a police raid at a house church gathering that resulted in his arrest and beating. Although Chen was granted withholding of removal, Zhang has not provided documentation explaining the reasons behind the decision granting him that relief. The BIA determined that Chen's grant of withholding of removal was not a basis to reopen her case "at this time." App. at 6. We agree. The grant of withholding of removal to her husband has no effect on Zhang's petition because there is no provision for a derivative grant of withholding of removal, as there is for asylum. See Arif v. Mukasey, 509 F.3d 677, 681-82 & nn. 16-17 (5th Cir. 2007).

17

and chronicling a few specific incidents in which underground worshippers were arrested, detained, or beaten.

Notwithstanding Zhang's submissions, the State Department's 2010 Human Rights and Religious Freedom Reports that Zhang provided indicated only that underground worshippers faced mistreatment, not necessarily that conditions have worsened. Id. at 414 (identifying underground religious leaders who had been arrested and detained); id. at 511-14 (noting arrest, imprisonment, and harassment of underground leaders and worshippers). The BIA acknowledged that there were reports of mistreatment of underground leaders and worshippers, but relied on the State Department reports in concluding that Zhang would not face persecution if removed to China. We cannot say that the BIA abused its discretion when it based its conclusion on such evidence.

Although the BIA did not specifically discuss the contents of the articles Zhang presented, the BIA has discretion in weighing evidence and it is permissible for it to "'accord greater weight' to State Department reports in the record than to countervailing documentary evidence." Huang v. Holder, 677 F.3d 130, 138 (2d Cir. 2012) (quoting Shao v. Mukasey, 546 F.3d 138, 152 (2d Cir. 2008)); see also Matter of H-L-H & Z-Y-Z, 25 I. & N. Dec. 209, 213 (BIA 2010) (noting that State Department country reports are "highly probative evidence and are usually the best source of information on conditions in foreign nations"), rev'd on other grounds, Huang v. Holder, 677 F.3d 130. The BIA need not "write an exegesis on every contention," and must "merely . . . consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to

18

perceive that it has heard and thought and not merely reacted." <u>Filja</u>, 447 F.3d at 256 (quoting <u>Mansour v. INS</u>, 230 F.3d 902, 908 (7th Cir. 2000)).  We are satisfied the BIA has met that standard here.

Further, while Zhang has established that this new evidence could not have been presented at her original hearing, in order to trigger the exception to § 1003.2(c)(2)'s time and numerical limitations, she also must show that it would have been material.  <u>Khan</u>, 691 F.3d at 496.  To show materiality, Zhang must carry the "heavy burden" of alleging facts that "would be sufficient, if proved, to change the result of [her] application."  <u>Id.</u> at 496-97.  Zhang has not carried this burden; rather, the most probative and reliable evidence—the State Department reports—indicate only that underground worshippers face mistreatment, not necessarily that conditions have worsened.  The record does not establish that her petition would be decided differently today than it would have been in 2004; indeed, it is devoid of any evidence regarding treatment of underground worshippers in 2004.

In <u>Shu Han Liu</u>, the court concluded that conditions for worshippers at underground churches in China had changed for the worse since 2002.  <u>Shu Han Liu</u>, 718 F.3d at 713.  But the petitioner in <u>Shu Han Liu</u> presented far more extensive evidence, including State Department Reports from 2002—the date of the petitioner's original petition—through 2011.[9]  <u>Id.</u> at 712.  In rejecting the petitioner's motion to reopen in <u>Shu</u>

_____

[9] In a supplemental submission filed at our request to comment on the opinion in <u>Shu Han Liu</u> the government argued that the court in that case impermissibly based its finding on extra-record evidence.  <u>See</u> <u>Nbaye</u>, 665 F.3d at 59-60 (ordinarily limiting review to record before the BIA); 8 U.S.C. § 1229a(c)(4)(A) (placing burden of proof on

19

<u>Han Liu</u>, the BIA limited itself to "reports dated 2009 or later," which the court explained "deprived [the BIA] of the ability to compare current conditions in China regarding persecution of members of house churches with conditions in 2002, the date of the petitioner's final removal hearing." <u>Id.</u>

This is precisely the evidence missing in this case: by failing to include evidence regarding country conditions at the time of her original petition, Zhang has failed to carry her "heavy burden" to show that her petition would be resolved differently today than it would have been in 2004. <u>See</u> <u>Khan</u>, 691 F.3d at 497; <u>In re S-Y-G-</u>, 24 I & N Dec. 247, 253 (BIA 2007) (noting that alien must provide evidence describing country conditions both at time of original hearing and at time of motion to reopen). Zhang did not raise the issue of persecution of house church members in her original petition because she had not yet converted to Catholicism. Accordingly, the only way the BIA would be able to conduct a meaningful comparison of country conditions in 2004 and today would be for Zhang to adduce evidence regarding those conditions in 2004, as the petitioner did in <u>Shu Han Liu</u> to the satisfaction of the court of appeals. Absent such evidence, we cannot say that the BIA abused its discretion in finding that Zhang had failed to establish changed country conditions. We certainly are not going to hold that the <u>Shu Han Liu</u> court

---

alien). However, in its opinion, the court indicated that, contrary to the government's argument, it based its decision on reports that had been before the BIA, but which it "unaccountably ignored." <u>Shu Han Liu</u>, 718 F.3d at 713. Regardless of whether the evidence considered in <u>Shu Han Liu</u> was a part of the record, it was more extensive than the record presented here. Because we confine our review to the record before the BIA in this case, <u>Shu Han Liu</u> does little to help Zhang's case.

rendered a decision binding on the BIA or, of course, on other courts of appeals, in cases based on different records.[10]

Based on the record presented to the BIA in this case, Zhang has failed to establish changed country circumstances—as opposed to changed personal circumstances—sufficient to trigger the exception to § 1003.2(c)(2)'s time and numerical limitations on petitions to reopen. The BIA thus properly rejected her motion to reopen as both time- and number-barred.

## V. CONCLUSION

For the foregoing reasons, we will deny Zhang's petition for review and we vacate the May 14, 2013 stay of removal.

---

[10] We are not implying that the Shu Han Liu opinion would be binding on the BIA in cases arising in circuits other than the Seventh or on other courts of appeals deciding the same issue on a record indistinguishable from that in Shu Han Liu.

21