NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3620
_____

YURIY FAUSTOV,

Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of a Decision
and Order of the Board of Immigration Appeals
(BIA No. 089-243-104)
Andrew Arthur, Immigration Judge
_____

Submitted under Third Circuit LAR 34.1(a)
March 27, 2015

BEFORE:  GREENAWAY, JR., KRAUSE, and GREENBERG, Circuit Judges

(Filed: May 7, 2015)
_____

OPINION*
_____

GREENBERG, Circuit Judge.
_____

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
  does not constitute binding precedent.

## I. INTRODUCTION

This matter comes on before this Court on a petition for review of a decision and order of the Board of Immigration Appeals ("BIA") in which petitioner, Yuriy Faustov, a native and citizen of Ukraine, seeks review of a decision and order denying his motion to reopen his removal proceeding to allow him to file a second application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). During the eight years in which Faustov has sought to avoid being removed to Ukraine after overstaying the time in which he was authorized to be in this country, he has been consistently unsuccessful in both administrative and judicial proceedings. To prevail now, Faustov must demonstrate "changed circumstances" to justify reopening his case but, as the BIA held, he has failed to do so. Accordingly, we will deny the petition for review.

## II. STATEMENT OF JURISDICTION

The BIA had jurisdiction to entertain Faustov's application to reopen his removal proceeding, 8 C.F.R. § 1003.2(a), and we have jurisdiction to consider his timely petition for review in which the underlying removal proceedings were completed in York, Pennsylvania, within this circuit, under 8 U.S.C. § 1252(a)(1), (b)(1), and (b)(2).

## III. STANDARD OF REVIEW

If the BIA denies reopening of an asylum petition because, as it held was the case here, the petitioner has failed to demonstrate prima facie eligibility for asylum, we review the decision to deny reopening under an abuse of discretion standard. However, within

2

that standard we review the BIA's findings of fact to determine if they are supported by substantial evidence. Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). In applying the abuse of discretion standard of review we accord "broad deference" to the BIA's decision which we will not disturb unless we find it to be "arbitrary, irrational, or contrary to law." Ezeagwuna v. Ashcroft, 325 F.3d 396, 409 (3d Cir. 2003); Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). The substantial evidence standard requires "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1428 (1971)). Evidence can be substantial even if "[i]t is less than a preponderance of the evidence" provided that it is "more than a mere scintilla [of evidence]." Id. The substantial evidence standard is deferential to the agency's findings. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

## IV. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Prior Removal Proceedings

Faustov was born in the western portion of Ukraine in 1976. In the summer of 1998, he was admitted to the United States for one year as a nonimmigrant visitor. Nevertheless, he has remained in this country. While here, he has been convicted of: (1) driving under the influence of alcohol or a controlled substance; (2) causing an accident involving damage to an attended vehicle; and (3) possession of a controlled substance. On November 19, 2009, the Department of Homeland Security through its office of

Immigration and Customs Enforcement, issued a notice to appear charging that Faustov was removable under § 237(a)(1)(B) of the Immigration and Nationality Act. See 8 U.S.C. § 1227(a)(1)(B) (2006).

Faustov responded with what he characterizes as a defensive application for asylum. He first alleged that he would be targeted by Ukraine's "mafia" for extortion due to the misperception that he had acquired wealth in the United States. He also claimed he would be unable to obtain proper treatment for his diabetes because certain types of insulin available in this country are not available in Ukraine. He did not identify his religion in his application, but at a hearing on January 17, 2012, he testified that he was an Orthodox Christian.

In 2012, an immigration judge denied Faustov's application but granted him the right of voluntary departure. Faustov appealed this decision but the BIA dismissed his appeal, though it remanded the case to the immigration judge to adjust the time period provided for voluntary departure. On October 16, 2013, we denied Faustov's petition for review of the BIA's decision. Faustov v. Att'y Gen., 538 F. App'x 166 (3d Cir. 2013). On October 29, 2013, Faustov filed a motion to reopen due to the alleged ineffective assistance that his attorney provided in prosecuting his application for asylum. The BIA denied the motion as untimely and concluded that Faustov had not demonstrated any basis for equitable tolling of the time to seek reopening of the BIA's decision or for ineffective assistance of counsel. Faustov did not seek review of the BIA's order.

        B.      Faustov's Motion to Reopen Based on Practice of Judaism and Political Opinions

On May 19, 2014, Faustov filed another motion to reopen his removal proceedings seeking asylum, withholding of his removal, and CAT protection. He presented political and religious claims unrelated to his past contentions, alleging that he feared future persecution and torture because of his religion and his political opinion. Faustov supported this second reopening motion with: (1) an application for asylum, withholding of removal, and CAT protection; (2) a written statement; (3) the United States Department of State Ukraine Country Report on Human Rights Practices for 2013 ("2013 Country Report"); and (4) a variety of news articles and columns regarding events in Ukraine in 2014.

In his motion, Faustov asserted that he feared persecution on account of his political opinions and practice of Judaism. He explained that the Russian occupiers of Ukraine would harm him because he is Ukrainian and that Ukrainian "ultra-nationalists" would harm him because they would think he was a Russian infiltrator. A.R. at 70. According to Faustov, Ukrainians would consider him a Russian infiltrator because of his absence from Ukraine, knowledge of the Russian language, and unfamiliarity with life in modern day Ukraine. Faustov claimed that although he was "neither a part of the Ukrainian nationalist movement [n]or the pro-Russian movement," and, accordingly, was not political, he would face backlash in Ukraine for an imputed political viewpoint. Id. at 25. Faustov did not indicate that he had the intent to express any political opinion, but his counsel represented that Faustov opposed the "actual and de facto control of pro-Russian demonstrators, terrorists, Russian military and Russian intelligence personnel"

5

and that, if questioned, Faustov would state his support of Ukrainian nationalism. Id. at 45. In something of a contradiction, however, the motion later proffered that if Faustov fell "into the hands of the Russians," he would deny Ukrainian ethnicity. Id. at 47.

Faustov further asserted that he feared harm in Ukraine because of his Jewish practices. He alleged that his father was Jewish but had been unable to practice his faith openly in Ukraine.[1] Faustov expressed his fear of death or abuse because Ukrainians in the western part of the country had anti-Semitic feelings. Id. at 70. Yet he supported this contention with articles describing incidents in eastern Ukraine, including one in which masked individuals distributed anti-Semitic leaflets outside of a synagogue in the eastern Ukrainian city of Donetsk. Other articles described Molotov cocktails being thrown at synagogues in eastern Ukraine and described anti-Semitic incidents in Zaporizhia, a town in eastern Ukraine, and Nikolayev, "a Black Sea port city . . . in southeastern Ukraine." Id. at 145, 146. Faustov argued that these occurrences, together with the alleged "rise" of Ukrainian nationalists who sympathized with the philosophies of Stepan Bandera, an anti-Semitic World War II figure, create "an atmosphere of persecution for Jews." Id. at 33-34.[2]

---

[1] He previously had testified that his father was Christian.

[2] Faustov did not reconcile his claim of his own Jewish observance with his prior testimony of being an Orthodox Christian:

> Judge:     What's your religion?
> Faustov:   Christian.
> Judge:     You [sic] Roman Catholic or Ukrainian Orthodox?
> Faustov:   Orthodox.
> …

6

C.    The BIA's Denial of Faustov's Motion

The BIA denied Faustov's May 19, 2014 motion to reopen on July 30, 2014. When it addressed Faustov's claim of fear of persecution or torture based on political opinion, the BIA noted that Faustov failed to set forth any relevant political opinions in his supporting statement; he self-identified merely as "neither a part of the Ukrainian nationalist movement [n]or the pro-Russian movement." Id. at 4. The BIA further observed that Faustov was born and raised in the western part of Ukraine, his parents were Ukrainian, and he faced removal to western Ukraine. The BIA determined that Faustov's evidence did not support claims of a likelihood of future harm or torture due to imputed political opinion. In this regard it pointed out that Faustov's supporting statement failed to explain how he might be harmed in western Ukraine based on imputed political views given that (1) he had no apparent involvement in the politics of Ukraine, either before or after his entry to the United States in 1998 and (2) his evidence largely described activity in eastern Ukraine, a destination to which he would not be removed.

In addressing Faustov's claim for asylum based on his Jewish faith, the BIA noted at the outset that he failed to reconcile his earlier claim that he and his father were Orthodox Christians with his new claim that they both practiced Judaism. The BIA also cited Faustov's failure to claim Judaism as his religion in any of his previous asylum

---

Judge:      Is your father a Christian too?
Faustov:    [] Yes.

A.R. at 793-94.

7

applications. The BIA nonetheless adopted Faustov's religious claim for purposes of the motion to reopen and addressed the incidents on which Faustov based his claim of increased anti-Semitism in Ukraine. The BIA observed that they all occurred in eastern rather than western Ukraine. The BIA reviewed the evidence Faustov presented regarding nationalists associated with Stepan Bandera and found that this evidence could have been presented at Faustov's 2012 hearing before an immigration judge, and, just as significantly, none of the evidence demonstrated that these nationalists were committing anti-Semitic acts. Finally, the BIA took notice of Faustov's testimony regarding the manner in which he practiced Judaism, that is his assertion that he read books and learned about Jewish holidays and traditions. The BIA determined that he failed to present any evidence that a person who limits his practice of Judaism to academic pursuits has a clear probability of suffering harm rising to the level of persecution, or likelihood of being tortured for the activity. The BIA concluded that Faustov did not demonstrate prima facie eligibility for asylum, withholding of removal, or CAT protection based on his religion.

The BIA denied Faustov's motion to reopen on July 30, 2014, and he filed a timely petition for review of that decision and order with this Court on August 15, 2014.

## V.  DISCUSSION

A.     Faustov seeks a "changed circumstances" exception.

Motions to reopen removal proceedings are "disfavored" because "[t]here is a strong public interest in bringing litigation to a close as promptly as is consistent with the

8

interest in giving the adversaries a fair opportunity to develop and present their cases." INS v. Abudu, 485 U.S. 94, 107, 108 S.Ct. 904, 913 (1988). In a removal case, where "every delay works to the advantage of the deportable alien who wishes merely to remain in the United States," that interest is especially strong. INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 724 (1992). Accordingly, an alien endeavoring to reopen his suit must "meet[] a 'heavy burden' and present[] evidence of such a nature that the [BIA] is satisfied that if proceedings before the immigration judge were reopened, with all the attendant delays, [] new evidence offered would likely change the result in the case." In re Coelho, 20 I. & N. Dec. 464, 473 (B.I.A. 1992); Abudu, 485 U.S. at 110, 108 S.Ct. at 914-15. A motion to reopen must set forth facts not previously advanced that can be proven at a hearing and must be supported by affidavits and other evidentiary material. 8 C.F.R. § 1003.2(c)(1). The new evidence must not have been "available and could not have been discovered or presented at the former hearing." Id; see Zheng v. Att'y Gen., 549 F.3d 260, 265-66 (3d Cir. 2008).

For Faustov's motion to be granted he needed to overcome procedural obstacles because he previously had filed an unsuccessful motion to reopen and motions to reopen are subject to time and number limits. See Shardar v. Attorney General, 503 F.3d 308, 313 (3d Cir. 2007). Thus, ordinarily a party may file only one motion to reopen a proceeding, 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2 (c)(2), and except in cases seeking to set aside in absentia removal orders, a motion to reopen "must be filed not later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). These temporal and

9

numerical limitations, however, admit of an exception for motions that rest on changed circumstances arising in the country of nationality or in the country to which removal has been ordered. 8 C.F.R. § 1003.2(c)(3)(ii); see also 8 U.S.C. § 1229a(c)(7)(C)(ii).  The BIA may waive numerical and temporal bars to reopening if an alien makes a convincing demonstration of changed conditions in his homeland.  Shardar, 503 F.3d at 313.  Faustov relies on changed conditions in Ukraine to circumvent the procedural bars to his application.

B.      Faustov does not demonstrate "changed circumstances" warranting the the granting of his motion to reopen.

We conclude that the BIA did not abuse its discretion when it denied Faustov's motion to reopen.  In order to prevail on his motion to reopen the proceedings on the basis of changed country conditions, Faustov needed to demonstrate:

(1)      conditions have changed in Ukraine since his prior proceeding;
(2)      evidence demonstrating these changes was not available or discoverable during the previous proceeding; and
(3)      this evidence, when considered together with this evidence, shows a reasonable likelihood that he is entitled to relief.

See 8 U.S.C. § 1229a(c)(7)(C)(ii); Sevoian, 290 F.3d at 169-70 (citing 8 C.F.R. § 1003.2(c)(1)); Lin v. Att'y Gen., 700 F.3d 683, 685-86 (3d Cir. 2012).  A motion to reopen fails if it cannot satisfy any of these tests.  Abudu, 485 U.S. at 104–05, 108 S.Ct. at 912.

1.      The BIA did not abuse its discretion in denying Faustov's motion to reopen based on his claim of political opinion.

The BIA did not act arbitrarily, capriciously, or unlawfully when it denied Faustov's motion to reopen that was based on his claimed fear of future persecution because of his political opinion. See Ezeagwuna, 325 F.3d at 409. To present a prima facie case for relief that might warrant reopening, an applicant must produce "objective evidence" showing a "reasonable likelihood" that he can establish entitlement to relief. Shardar, 503 F.3d at 313 (citations omitted); Guo, 386 F.3d at 564. The BIA did not abuse its discretion in determining that Faustov failed to meet his burden of production with regard to evidence of his political opinion and could not demonstrate a "reasonable likelihood" that he would prevail upon reconsideration of his case.

Neither Faustov's asylum application nor his supporting statement set forth his political opinions. To be sure, Faustov's attorney filed a motion attributing political views to Faustov, but statements of counsel do not constitute evidence. INS v. Phinpathya, 464 U.S. 183, 188 n.6, 104 S.Ct. 584, 588 n.6 (1984) (overruled on other grounds). Faustov's counsel asserted that: (1) Faustov was neither pro-nationalist nor pro-Russian; (2) he was opposed to pro-Russian demonstrators and Russian military and intelligence occupying Ukraine; (3) he would declare his support of Ukrainian nationalism if questioned by pro-Russian supporters; and (4) he would deny his Ukrainian heritage to avoid harm if "taken" by Russians.[3] Because Faustov himself did not provide testimony or evidence that he held these views, however, the BIA correctly declined to consider them.

---

[3] We note that these positions seem to be inconsistent.

Faustov did present testimony of his subjective fear that competing factions in his country would impute political opinions to him and persecute Faustov on that basis. Specifically, he alleged that nationalists in western Ukraine wrongly would identify him as Russian and extort, kidnap or kill him, and that, conversely, Russians would be "skeptical" of him because of his Ukrainian heritage and would not "accept" him. However, the record does not indicate that persons in Faustov's circumstances face persecution due to real or imputed political opinion. Though the State Department Country Report indicates that the Ukrainian government is persecuting individuals because of their stance on nationalism or secession, the reports and articles which Faustov submitted regarding conditions in eastern Ukraine do not indicate that individuals who do not favor secession are being kidnapped, harmed or killed on account of their views, either in the eastern or western parts of the country.

We recognize that the evidence demonstrates that there are volatile conditions in various parts of Ukraine. However, the BIA properly considered this evidence in the context of ascertaining how the conditions specifically applied to Faustov. His citation of the activities of pro-Russian occupiers, road blocks, political demonstrations, and other circumstances evidencing volatile conditions demonstrate that Ukraine is in a period of political unrest. Nevertheless, the evidence does not meet the more significant threshold, that is, it does not sufficiently establish that Faustov himself is likely to face persecution on account of political opinion if removed to Ukraine.

It bears reiteration that general conditions of civil unrest or chronic violence and lawlessness do not support a grant of asylum. "Mere generalized lawlessness and

12

violence between diverse populations, of the sort which abounds in numerous countries and inflicts misery upon millions of innocent people daily around the world, generally is not sufficient to permit the Attorney General to grant asylum." Konan v. Att'y Gen., 432 F.3d 497, 506 (3d Cir. 2005) (citations omitted). "An asylum applicant must make a showing of a particularized threat of persecution." Shardar, 503 F.3d at 316.

Faustov avers that the BIA abused its discretion by failing to "meaningfully consider" the evidence and arguments presented but we find his argument unavailing inasmuch as "the BIA is not required to write an exegesis on every contention." Toussaint v. Att'y Gen., 455 F.3d 409, 414 (3d Cir. 2006) (internal quotation marks and citation omitted). "In fact there is no advantage in writing a long opinion when a short one will do as the parties do not want law review articles, they want intelligible opinions explaining the basis for the court's determination." Id.. The BIA's opinion demonstrates that it meaningfully reviewed the evidence and Faustov's arguments and that it considered testimonial evidence, information in the 2013 Country Report, and articles submitted in support of the motion. The BIA explained in considerable detail that Faustov failed to demonstrate by objective evidence that someone like him in Ukraine is likely to face persecution on account of a political opinion, real or imputed to him.

Ultimately, Faustov had the burden of demonstrating that the evidence established his prima facie eligibility for asylum based on his political opinion, and he failed to do so. He did not provide reliable evidence that others would impute political views to him. He did not demonstrate that there was a reasonable chance that his views, actual or imputed, would result in his persecution by the government, or persons the government is unable

13

or unwilling to control. We therefore find that the BIA did not abuse its discretion in declining to reopen Faustov's proceedings when it concluded that he failed to present a prima facie case for relief with respect to his political opinion.

        2.       The BIA did not abuse its discretion when it denied Faustov's motion to reopen based on his claim of the likelihood of future persecution by reason of his religious affiliation.

The BIA determined that Faustov did not demonstrate a reasonable likelihood that he would be subjected to harm rising to the level of persecution by the government of Ukraine, or anyone else, on account of his claimed practice of Judaism. The BIA acknowledged that Faustov's evidence described several incidents of anti-Semitic vandalism and harassment. However, as it noted, the incidents described were in eastern Ukraine, where pro-Russian factions of the population are based, rather than in pro-nationalist western Ukraine, where Faustov formerly lived and to where he would be removed. Faustov does not dispute the BIA's fact findings with respect to the location of these occurrences.

Faustov needed to supply evidence that Jews faced conditions that had worsened or changed in Ukraine since his last hearing. See 8 U.S.C. § 1229a(c)(7)(C)(ii). The BIA cited the 2013 Country Report as evidence that conditions for Jews have not worsened materially since Faustov's 2012 hearing. Notably, "Jewish community leaders reported that anti-Semitism was in decline and authorities took steps to address problems of anti-Semitism when they arose." A.R. at 120. A Jewish non-governmental organization active in the region cited long-term data showing "'a trend of improvement' in the level

14

of anti-Semitism, stating, 'over the last four to five years, there has been a continuous decline in the number of anti-Semitic publications in the press; in the number of acts of vandalism of cemeteries, memorials, and synagogues; and the number of assaults on the street of Jewish people,' as well as declining negative attitudes toward Jewish persons in public opinion polls." Id. at 121.

The BIA also reviewed Faustov's evidence that some Ukrainian nationalists have associated themselves with Stepan Bandera, a deceased Ukrainian nationalist linked with Nazi Germany. It found that evidence of this association predated Faustov's 2012 hearing and could have been presented at that hearing. See 8 U.S.C. § 1229a(c)(7)(C)(ii). Moreover, it observed that Faustov did not provide evidence to support his suggestion that nationalists who identified with Bandera's goal of nationalism also had adopted anti-Semitic views or had carried out any anti-Semitic acts in western Ukraine. Finally, it noted that Faustov failed to show that persons who "practice" Judaism merely by reading books and learning about Jewish holidays and traditions would have a well-founded fear or clear probability of harm on that account.[4] A.R. at 5. Altogether, we find that the BIA did not abuse its discretion in determining that Faustov failed to demonstrate a prima facie case for relief that might warrant reopening based on religion.

---

[4] Faustov contends that the BIA failed to take his claimed practice of Judaism at face value. We note that the BIA cited Faustov's prior testimony before an immigration judge that both he and his father practiced the Orthodox Christian faith and noted that Faustov failed to reconcile his prior claim of being an Orthodox Christian with his new claim of Jewish affiliation. However, the BIA merely noted this discrepancy, indicating that "even assuming that the respondent's religion is Judaism, as he now claims, the evidence submitted with the motion does not show changed conditions, or the respondent's prima facie eligibility for relief." A.R. at 5.

15

3.    The BIA did not abuse its discretion in denying Faustov's motion to reopen based on his CAT claim.

The BIA exercised sound discretion in denying reopening to allow Faustov to pursue his CAT claim because he failed to present any objective evidence that the government of Ukraine would torture him or acquiesce in his torture. An applicant for relief under the CAT bears the burden of establishing that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. 8 C.F.R. § 208.16(c)(2). This standard for relief "has no subjective component, but instead requires the alien to establish, by objective evidence" that he or she is entitled to relief. In re J-E-, 23 I. & N. Dec. 291, 302 (B.I.A. Mar. 22, 2002) (en banc). The prima facie case standard for a motion to reopen under the CAT requires the applicant to produce objective evidence showing a reasonable likelihood that he can establish that he is more likely than not to be tortured. Sevoian, 290 F.3d at 175 (citation omitted).

Under that standard, and in light of our deferential scope of review, we do not find that the BIA acted arbitrarily or contrary to law when it decided that Faustov did not make a prima facie showing that his removal to Ukraine would lead to probable torture. Under the applicable regulations, torture is defined as acts done "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," by means of which "severe pain or suffering, whether physical or mental, is intentionally inflicted" for purposes such as obtaining confessions, punishment, intimidation or coercion. 8 C.F.R. § 1208.18(a)(1). It is significant that even cruel and inhuman behavior by government officials may not implicate the torture regulations.

16

"Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2).

Faustov based his claim of fear of torture on the same evidence as his claims for asylum and withholding of removal, i.e. general conditions in Ukraine. He did not present evidence that either members of the government or non-governmental entities beyond control of the government are torturing political opponents or members of the Jewish faith. Furthermore, Faustov did not present any reason why anyone in Ukraine would seek to torture him for reasons other than his religion or a political opinion imputed to him.

The BIA assessed Faustov's evidence and determined that he presented a set of unpersuasive, conclusory contentions with respect to his CAT claim. Ultimately, Faustov needed to produce objective evidence showing a reasonable likelihood that he would be tortured with the consent and acquiescence of the Ukrainian government, or that the government officials remain willfully blind and inept at confronting torturous conduct with respect to people like him. See Illegal Immigration Reform and Immigration Responsibility Act, § 241, 110 Stat. 3009–599, 8 U.S.C. § 1231 (2000 ed.); 8 C.F.R. § 1208.18(a)(7). Faustov did not establish that he is more likely than not to be tortured if removed. The BIA did not abuse its discretion in determining that Faustov failed to establish objectively a right to relief under CAT.

## VI. CONCLUSION

Faustov fails to vault his motion to reopen over the temporal and numerical hurdles erected by the regulations. We will not permit an "endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." <u>Lin</u>, 700 F.3d at 685-86 (citations omitted). Our analysis ends, then, with the determination that the BIA acted without abusing its discretion. Removal has been mandated, and we act now to bring these proceedings to as swift a conclusion as the interests of justice will permit. The petition for review of the decision and order of July 30, 2014, will be denied.